# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————

No. 04-1815

—————

United States of America,

        Appellee,

        v.

Ned Walker,

        Appellant.

\*  
\*  
\*  
\*   Appeal from the United States  
\*   District Court for the  
\*   Northern District of Iowa.  
\*  
\*  
\*

—————

Submitted: November 19, 2004  
Filed: January 6, 2005

—————

Before WOLLMAN and HEANEY, Circuit Judges, and HOLMES,[1] District Judge.

—————

HOLMES, District Judge.

The issue in this case is whether Iowa's offense of Operating While Intoxicated ("OWI") is a "crime of violence" under the United States Sentencing Guidelines.

## I.

Ned Walker entered a plea of guilty to a charge of conspiracy to distribute methamphetamine. The presentence investigation report stated that his base offense

—————

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas, sitting by designation.

level was 24, which should be reduced three levels for acceptance of responsibility, leaving an offense level of 21. Walker had a total of 17 criminal history points, placing him in criminal history category VI, which would make Walker's sentencing range 77 to 96 months.

The government objected to the presentence investigation report, contending that Walker was a career offender because he had two prior predicate crimes of violence. One of the prior crimes was for attempted burglary in 1994, which Walker conceded was a "crime of violence." The other was an OWI offense in 1991 in Iowa, which Walker contended was not a "crime of violence." The district court made no findings of fact but held, as a legal matter, that OWI is a "crime of violence" as defined in U.S.S.G. § 4B1.2(a)(2). The two predicate crimes of violence – burglary and OWI – made Walker a career offender under U.S.S.G. § 4B1.1. With career offender status, Walker had a total offense level of 29, criminal history category VI, which has a sentencing range of 151 to 188 months. The district court sentenced Walker to 151 months.

We review the application of the sentencing guidelines *de novo*. *United States v. Sun Bear*, 307 F.3d 747, 750 (8th Cir. 2002).

## II.

OWI is not specifically named in U.S.S.G. § 4B1.2 as a crime of violence. The Supreme Court has held that we should look to the statutory definition of the prior offense, not to the underlying facts, to determine whether a prior conviction is a predicate offense. *Taylor v. United States*, 495 U.S. 575, 600-02, 110 S. Ct. 2143, 2159-60, 109 L. Ed. 2d 607 (1990).[2] *See also United States v. Smith*, 171 F.3d 617,

[2]*Taylor* construed 18 U.S.C. § 924(e)(2)(B)(ii), which is identical to U.S.S.G. § 4B1.2(a)(2), except that the guideline adds "of a dwelling" after the "burglary." The current version of § 4B1.2 was adopted by the Sentencing Commission in Amendment 268. In explaining the amendment, the Sentencing

620 (8th Cir. 1999); *United States v. Bauer*, 990 F.2d 373, 374-75 (8th Cir. 1993) (rejecting a defendant's argument under U.S.S.G. § 4B1.2 that the court should consider the underlying facts of the predicate offense); *United States v. Whitfield*, 907 F.2d 798, 800 (8th Cir. 1990) (holding that 18 U.S.C. § 924(e) mandates a formal categorical approach looking only to the statutory definitions of the prior offenses, not to the underlying facts). The Application Notes to § 4B1.2 state, in pertinent part, that an offense is a crime of violence if "the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted . . . , by its nature, presented a serious potential risk of physical injury to another." Most of that language was added in Amendment 268, along with the current version of § 4B1.2(a). It was amended by Amendment 433 in 1991 to include the language, *i.e.*, *expressly charged*. These changes to the Application Notes apparently were made in response to cases holding that courts may look beyond the face of the indictment in determining whether a prior offense is a "crime of violence" under § 4B1.2(a)(2). *United States v. Fitzhugh*, 954 F.2d 253, 254 (5th Cir. 1992). This Court stated in *United States v. Wright*, 957 F.2d 520, 522 (8th Cir. 1992), that courts may examine the facts underlying the conviction when deciding whether an offense involves conduct that presents a serious potential risk of physical injury to another under U.S.S.G. § 4B1.2(a)(2). As noted in *United States v. Rodriguez*, 979 F.2d 138, 141 (8th Cir. 1992), that statement in *Wright* was *dicta*. *Wright* followed *United States v. John*, 936 F.2d 764, 770 (3rd Cir. 1991). The Third Circuit has recognized that the Sentencing Commission effectively overruled *John* when it adopted the current version of the Application Notes to § 4B1.2. *United States v. Joshua*, 976 F.2d 844, 852-54 (3rd Cir. 1992), *overruled on other grounds by Stinson v. United States*, 508 U.S. 36, 113 S. Ct. 1913, 123 L. Ed. 2d 598 (1993). Even so, the *dicta* in *Wright* has been followed in this circuit. *United States v.*

---

Commission said that the definition of crime of violence used is derived from 18 U.S.C. § 924(e). U.S. SENTENCING GUIDELINES MANUAL App. C - Vol. 1, 133 (2003). Although § 924(e)(2) differs in some respects from § 4B1.2, those differences relate to portions of those provisions not at issue here.

*Gomez-Hernandez*, 300 F.3d 974, 980 (8th Cir. 2002); *United States v. Kind*, 194 F.3d 900, 907 (8th Cir. 1999).

### III.

Walker was convicted under Iowa Code Ann. § 321J.2.1, which provides:

1. A person commits the offense of operating while intoxicated if the person operates a motor vehicle in this state in any of the following conditions:

> a. While under the influence of an alcoholic beverage or other drug or a combination of such substances.

> b. While having an alcohol concentration of .08 or more.

> c. While any amount of a controlled substance is present in the person, as measured in the person's blood or urine.

The information says nothing about the offense in question except that Walker "did operate a motor vehicle while under the influence of an alcoholic beverage or drugs or a combination of such substances, contrary to Section 321J.2 of the 1991 Code of Iowa, THIRD OFFENSE . . . ." A third offense is a class "D" felony punishable by a term of imprisonment not to exceed five years. Iowa Code Ann. § 321J.2.2.c.

The Supreme Court of Iowa has said that the offense of operating while intoxicated consists of two essential elements: (1) the operation of a motor vehicle (2) while under the influence of alcohol. *State v. Boleyn*, 547 N.W.2d 202, 204 (Iowa 1996). The definition of "operate" is "the immediate, actual physical control over a motor vehicle that is in motion and/or has its engine running." *Id*. at 205. A person can be "operating" a vehicle for purposes of an OWI charge even if the vehicle is not moving and even if the vehicle is incapable of moving, so long as the engine is running. *State v. Murray*, 539 N.W.2d 368 (Iowa 1995). Thus, a person can

"operate" a motor vehicle without "driving" it. *Id.* at 369. In *Murray*, the Supreme Court of Iowa affirmed an OWI conviction where the defendant was found intoxicated and slumped over the wheel of his vehicle while the engine was running but the vehicle was incapable of mechanical movement due to a non-functioning clutch. *Id. See also State v. Weaver*, 405 N.W.2d 852, 854 (Iowa 1987) ("[T]here need not be vehicle movement nor capability of vehicle movement for a person to be in actual physical control, and therefore operating, a motor vehicle . . . ."). The OWI statute extends to operating a vehicle on private property. *State v. Rosenstiel*, 473 N.W.2d 59, 62 (Iowa 1991); *State v. Valeu*, 134 N.W.2d 911 (Iowa 1965). Proof of recklessness is not an essential element of operating while intoxicated. *State v. Massick*, 511 N.W.2d 384, 387 (Iowa 1994). "Reckless driving requires proof that the defendant actually *drove* a vehicle, that is, moved it. In contrast, operating while intoxicated only requires proof that the defendant *operated* a vehicle. Under our law, the two are not synonymous." *Id.* (emphasis in the original). Although OWI does not require *driving* a vehicle as an element, in fact Walker did drive while intoxicated, and he did cause an accident. The opinion of the Iowa Court of Appeals affirming Walker's conviction states: "It is undisputed Walker struck the rear of the [Amy] Dodge vehicle with sufficient force to push it across a street, through a street sign and on to a residential lawn. Dodge received bumps to her head and arm; the three passengers were not injured." *State v. Walker*, 499 N.W.2d 323, 324 (Iowa App. 1993).

With this background as to the elements of OWI under Iowa law and the underlying facts of Walker's conviction, we now turn to the sentencing guidelines.

## IV.

U.S.S.G. § 4B1.1(a) provides, "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has

at least two prior felony convictions of either a crime of violence or a controlled substance offense."

U.S.S.G. § 4B1.2(a) provides:

(a)     The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that --

    (1)     has as an element the use, attempted use, or threatened use of physical force against the person of another, or

    (2)     is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Prior to 1989, the sentencing guidelines defined "crime of violence" by reference to 18 U.S.C. § 16, which provides:

The term "crime of violence" means --

(a)     an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b)     any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*See United States v. Parson*, 955 F.2d 858, 864 (3rd Cir. 1992). By Amendment 268, effective November 1, 1989, the Sentencing Commission adopted the definition of "crime of violence" currently in force. U.S. SENTENCING GUIDELINES MANUAL App.

C - Vol. 1 at 131-33 (2003). The Commission explained, "[t]he definition of crime of violence used in this amendment is derived from 18 U.S.C. § 924(e)." *Id*. at 133. Section 924(e) defines "violent felony." The portions of U.S.S.G. § 4B1.2 at issue here are identical to the corresponding portions of 18 U.S.C. § 924(e)(2)(B), except that the guideline provision adds the phrase *of a dwelling* after the word *burglary*.[3] Since the pertinent language is substantially identical, and since the Commission derived the definition of "crime of violence" in § 4B1.2(a) from the definition of violent felony in 18 U.S.C. § 924(e)(2), we will construe guideline language at issue to be consistent with the corresponding language in the statute. *Cf. United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992) (Breyer, C.J.) (interpreting 18 U.S.C. § 924(e)(2)(B)(ii) in harmony with the guideline).

The government contends that OWI is a "crime of violence" under § 4B1.2(a)(2) because it is a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." The "otherwise" clause of § 4B1.2(2) follows an enumeration of specific crimes: burglary of a dwelling, arson, extortion, and crimes that involve the use of explosives. Where general words follow specific words in a statutory enumeration, the established interpretative canons of *noscitur a sociis* and *ejusdem generis* provide that the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. *Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384-85, 123 S. Ct. 1017, 1025, 154

---

[3]Section 924(e)(2)(A) defines "serious drug offense" in a manner different from the definition of "controlled substance offense" in U.S.S.G. § 4B1.2(b). The most notable difference is that § 924(e)(2)(A) requires an offense with a maximum term of imprisonment of ten years or more, whereas § 4B1.2(b) defines "controlled substance offense" to include drug offenses "punishable by imprisonment for a term exceeding one year." Section 924(e)(2)(B) and (C) has language relating to juvenile convictions that was omitted in § 4B1.2(a). And, as noted above, § 4B1.2(a)(2) adds *of a dwelling* after *burglary*. Otherwise, the guideline is identical to the statute.

L. Ed. 2d 972 (2003).  *See also Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 836 (8th Cir. 1997); *United States v. Freeman*, 473 F.2d 7, 9 (8th Cir. 1973).  The Court of Appeals for the District of Columbia applied these interpretive canons to § 4B1.2(2) in *United States v. Thomas*, 361 F.3d 653, 659 (D.C. Cir. 2004).  This Court applied *ejusdem generis* to another section of the sentencing guidelines in *United States v. Mendoza-Alvarez*, 79 F.3d 96, 99 (8th Cir. 1996).

The conclusion that *noscitur a sociis* and *ejusdem generis* should be used to interpret U.S.S.G. § 4B1.2(a) is reinforced by the legislative history of the statute from which the guideline was derived.  Title 18 U.S.C. § 924(e)(2)(B) was amended in 1986 by the Firearms Owners' Protection Act, Pub. L. 99-308, § 104, 100 Stat. 457, and five months later by § 1402 of Subtitle I (the Career Criminals Amendment Act of 1986) of the Anti-Drug Abuse Act of 1986, Pub. L. 99-570, 100 Stat. 3207-40.  The history is stated in *Taylor*, 495 U.S. at 581-83, 110 S. Ct. at 2149-50.  The Report of the House Committee on the Judiciary explained:

> The Subcommittee on Crime held a hearing . . . to consider whether it should expand the predicate offenses (robbery and burglary) in existing law in order to add to its effectiveness.  At this hearing a consensus developed in support of an expansion of the predicate offenses to include serious drug trafficking offenses . . . and violent felonies, generally.  This concept was encompassed in H.R. 4885 by deleting the specific predicate offenses for robbery and burglary and adding as predicate offenses State and Federal laws for which a maximum term of imprisonment of 10 years or more is prescribed for manufacturing, distributing or possessing with intent to manufacture or distribute controlled substances and violent felonies under Federal or State law if the offense has an element the use, attempted use or threatened use of physical force against a *person*.  This latter provision would include such felonies involving physical force against a person such as murder, rape, assault, robbery, etc.

The other major question involved in these hearings was as to what violent felonies involving physical force against *property* should be included in the definition of "violent" felony. The Subcommittee agreed to add the crimes punishable for a term exceeding one year that involve conduct that presents a serious potential risk of physical injury to others. This will add State and Federal crimes against property such as burglary, arson, extortion, use of explosives and similar crimes as predicate offenses where the conduct involved presents a serious risk of injury to a person.

H.R. REP. NO. 99-849, at 3 (1986) (emphasis in original). For present purposes, the most important sentence of this lengthy quotation is the last one, which states that the legislation would add "burglary, arson, extortion, use of explosives and *similar crimes* as predicate offenses where the conduct involved presents a serious risk of injury to a person." *Id*. (emphasis added). Later, the Report states, in its section-by-section analysis, "*Subsection 2(b)(B)(ii)* adds all State and Federal felonies against property such as burglary, arson, extortion, use of explosives *and similar crimes* as predicate offenses where the conduct involved presents a serious risk of injury to a person." *Id*. at 5 (emphasis added). Thus, the legislative history reinforces the view that the intent of the "otherwise" clause in 18 U.S.C. § 924(e)(2)(B)(ii) was to encompass crimes similar to burglary, arson, extortion, and crimes that involve the use of explosives.

In holding that a conviction of DUI causing serious bodily injury under Fla. Stat. § 316.193(3)(c)(2) is not a "crime of violence" under 18 U.S.C. § 16, the Supreme Court recently stated:

In construing both parts of § 16, we cannot forget that we ultimately are determining the meaning of the term "crime of violence." The ordinary meaning of this term, combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active

-9-

crimes that cannot be said naturally to include DUI offenses. *Cf. United States v. Doe*, 960 F.2d 221, 225 (CA1 1992) (Breyer, C.J.) (observing that the term "violent felony" in 18 U.S.C. § 924(e) (2000 ed. and Supp. II) "calls to mind a tradition of crimes that involve the possibility of more closely related, active violence"). Interpreting § 16 to encompass accidental or negligent conduct would blur the distinction between the "violent" crimes Congress sought to distinguish for heightened punishment and other crimes.

*Leocal v. Ashcroft*, 543 U.S. ___, 125 S. Ct. 377, 383 (2004). Our Eighth Circuit precedents reflect a "common sense approach to determining whether a given offense is a crime of violence." *Sun Bear*, 307 F.3d at 752. *See also Conway County Farmers Ass'n v. United States*, 588 F.2d 592, 598 (8th Cir. 1978) (quoting *Crane v. Commissioner*, 331 U.S. 1, 6, 67 S. Ct. 1047, 1051, 91 L. Ed. 1301 (1947) (The words of statutes "should be interpreted where possible in their ordinary, everyday senses.")). This "common sense approach" is consistent with the Supreme Court's resort in *Leocal* to the "ordinary meaning" of the term. It is common sense that OWI is not the same kind of offense as the crimes specifically listed in U.S.S.G. § 4B1.2(a)(2) – burglary of a dwelling, arson, extortion, and crimes that involve the use of explosives.[4] The latter are hostile, aggressive acts. They create a significant risk of violent confrontation between the criminal and the victim or the law enforcement officer. *Cf. Taylor*, 495 U.S. at 588 ("The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the

---

[4]At Walker's sentencing hearing, the district court observed, "[i]t would turn common sense on its head to make somebody a career offender who had two drunk driving convictions," but held that the plain language of the "otherwise" clause required that result. We agree with the district court's view that it is contrary to common sense to say that someone with two OWI convictions is a career criminal. *See also Parson*, 955 F.2d at 870. The district court, however, read the "otherwise" clause apart from the preceding list of specific crimes and the appropriate canons of construction and therefore erroneously attributed to the sentencing guidelines a result that would violate common sense.

offender and an occupant, caretaker, or some other person who comes to investigate."); *Thomas*, 361 F.3d at 660 (holding that escape is a crime of violence because the escape invites pursuit, and the pursuit invites confrontation); *Sun Bear*, 307 F.3d at 752 (holding that theft of a vehicle is a crime of violence because it presents a likelihood of confrontation).

The Supreme Court in *Leocal* noted that the language in 18 U.S.C. § 16(b) differs from the language in U.S.S.G. § 4B1.2(a)(2). *Leocal*, 543 U.S. at ___, 125 S. Ct. at 383 n.7. *See also United States v. McGill*, 2004 WL 2827746, at *2-3 (M.D. Ala. Dec. 10, 2004). Even so, the Court cited with approval the following passage from then Chief Judge Breyer's opinion in *Doe* stating that drunken driving should not be considered as a "violent felony" under 18 U.S.C. § 924(e):

> [T]o read the statute . . . to cover firearm possession [ ] would also bring within the statute's scope a host of other crimes that do not seem to belong there. To include possession [of a firearm], one would have to focus on the risk of direct *future* harm that present conduct poses. But, how could one then exclude, say, drunken driving or unlawful transportation of hazardous chemicals or other risk-creating crimes very unlike the burglary, arson, extortion, and explosives use that the statute mentions? There is no reason to believe that Congress meant to enhance sentences based on, say, proof of drunken driving convictions. Rather, we must read the definition in light of the term to be defined, "violent felony," which calls to mind a tradition of crimes that involve the possibility of more closely related, active violence.

960 F.2d at 225. This passage addresses the exact language under consideration here, albeit in 18 U.S.C. § 924(e) rather than in U.S.S.G. § 4B1.2. Drunken driving is "very unlike the burglary, arson, extortion, and explosives use that the statute [and the guideline] mentions." *Id*. Since drunken driving – or more precisely, operating while intoxicated – is very unlike the crimes specifically named in § 4B1.2(a)(2),

under the rule of *ejusdem generis*, OWI is not encompassed by the general language that follows.

The rule of *ejusdem generis* is closely related to another well-established canon of statutory construction that compels a narrower interpretation than that advocated by the government, *i.e.*, "the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." *Colautti v. Franklin*, 439 U.S. 379, 392, 99 S. Ct. 675, 684, 58 L. Ed. 2d 596 (1979). *See also Mountain States Tel. & Tel. Co.*, 472 U.S. 237, 249, 105 S. Ct. 2586, 2594, 86 L. Ed. 2d 168 (1985). The leading treatise on statutory interpretation explains:

> The doctrine of ejusdem generis is an attempt to reconcile an incompatibility between specific and general words so that all words in a statute and other legal instruments can be given effect, all parts of a statute can be construed together and no words will be superfluous. If the general words are given their full and natural meaning, they would include the objects designated by the specific words, making the latter superfluous. If, on the other hand, the series of specific words is given its full and natural meaning, the general words are partially redundant. The rule "accomplishes the purpose of giving effect to both the particular and the general words, by treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words."

> The resolution of this conflict by allowing the specific words to identify the class and by restricting the meaning of general words to things within the class is justified on the ground that had the legislature intended the general words to be used in their unrestricted sense, it would have made no mention of the particular words.

> The doctrine of ejusdem generis has been said to be "especially applicable to penal statutes."

2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47:17 (6th ed. 2000) (citations omitted). This Court avoids reading a statute in a manner that would render some words redundant. *Patterson*, 113 F.3d at 836; *Missouri v. Andrews*, 787 F.2d 270, 284 (8th Cir. 1986). Here, the government construes U.S.S.G. § 4B1.2(a)(2) to encompass all conduct that presents a serious potential risk of physical injury to another. That construction not only ignores the list of specific crimes that precede this general language and therefore modify it, that construction also would render the list of specific crimes redundant or superfluous.

The government's argument would also render superfluous the distinction in § 4B1.1(a) and § 4B1.2 between a felony that is a crime of violence and a felony that is a controlled substance offense. We punish controlled substance offenses, and include them as predicate offenses when determining which criminals are career offenders, because they involve a serious potential risk of physical injury to other persons. *Dalton v. Ashcroft*, 257 F.3d 200, 207 (2d Cir. 2001) ("Statutes criminalizing the use, possession and/or distribution of dangerous drugs and other controlled substances also underscore the fact that some criminal conduct may involve a substantial risk of injury or harm without at the same time involving the use of physical force."). On the government's argument, the inclusion of controlled substance offenses as separately named predicate offenses for career offender status would be superfluous because those offenses involve a substantial risk of physical injury to another and therefore would be included in the "otherwise" provision of § 4B1.2(a). Our interpretation of § 4B1.2(a)(2), however, preserves the distinction between subsections (a)(1), (a)(2), and (b); and it avoids a construction that renders any part of § 4B1.2 superfluous.

The government relies on *United States v. Jernigan*, 257 F.3d 865 (8th Cir. 2001), where this Court held that negligent homicide while operating a vehicle while intoxicated in violation of Ark. Code Ann. § 5-10-105(a)(1) was a crime of violence under U.S.S.G. § 4B1.2(a)(2). The opinion in *Jernigan* suggested that the Court was

-13-

adopting the rationale of Judge Easterbrook's concurring opinion in *United States v. Rutherford*, 54 F.3d 370 (7th Cir. 1995). *Jernigan*, 257 F.3d at 867. Judge Easterbrook's concurring opinion in *Rutherford* argued that a court should not look beyond the statutory elements and, if those are open-ended, the charging papers, citing *Taylor*. *Rutherford*, 54 F.3d at 378. Judge Easterbrook's argument, adopted by reference in *Jernigan*, is consistent with this Court's precedents that follow *Taylor* and look only to the elements of the predicate offense. *See Smith*, 171 F.3d at 620; *Bauer*, 990 F.2d at 375; *Whitfield*, 907 F.2d at 800. *Jernigan* was a homicide case; the elements of the prior offense included causing the death of another person. The offense of OWI under Iowa law includes no element of harm to another person, nor even an element of risk of harm to another person; and no homicide or serious injury occurred. Consequently, *Jernigan* is not on point.

We are mindful that some of our sister circuits have said, sometimes in *dicta*, that the language in 18 U.S.C. § 924(e)(2)(B)(ii) and U.S.S.G. § 4B1.2(a)(2) appears to be substantially broader than the language in 18 U.S.C. § 16. *See United States v. Lucio-Lucio*, 347 F.3d 1202, 1207 (10th Cir. 2003); *Dalton*, 257 F.3d at 207. However, when the Sentencing Commission amended the section at issue to delete the reference to 18 U.S.C. § 16 and insert the current language, the Commission stated as the reason for the amendment, "[t]he purpose of this amendment is to *clarify* the definitions of crime of violence and controlled substance offense used in this guideline." U.S. SENTENCING GUIDELINES MANUAL App. C - Vol. 1 at 133 (2003) (emphasis added). The purpose was to clarify, not to expand. Nothing in the commentary suggests that the Commission intended that the new language would significantly expand the scope of the definition of "crimes of violence." Two of our sister circuits have stated that the Sentencing Commission did in fact significantly expand the scope of the definition of "crimes of violence," perhaps unwittingly, when it deleted the reference to 18 U.S.C. § 16 and adopted the current language. *Bazan-*

*Reyes v. I.N.S.*, 256 F.3d 600, 609 (7th Cir. 2001); *Parson*, 955 F.2d at 866 n.10.[5] We respectfully disagree. For the reasons stated above, we are convinced that the Commission's commentary accurately describes its own actions in amending the definition of "crimes of violence." The language of 18 U.S.C. § 16(b) differs from U.S.S.G. § 4B1.2(a)(2), but both provisions are efforts to define "crime of violence," and both use language that calls to mind a tradition of violent, active crimes. The Commission's commentary on the latter indicates that it does not significantly differ in meaning from the former. That commentary is not plainly erroneous or inconsistent with U.S.S.G. § 4B1.2, so it is a binding interpretation of the phrase "crime of violence." *Stinson*, 508 U.S. at 47, 113 S. Ct. at 1920. The appropriate consideration of the list of specific crimes that precede the general language in U.S.S.G. § 4B1.2(a)(2), in the light of the canons of *noscitur a sociis* and *ejusdem generis* and the rule that a statute should be interpreted so as not to render one part inoperative, shows the correctness of the Commission's view that the current version of U.S.S.G. § 4B1.2 does not differ significantly from 18 U.S.C. § 16. And, if that is so, *Leocal* controls this case.

For these reasons, we hold that Iowa's offense of operating while intoxicated does not fall within the definition of "crime of violence" in U.S.S.G. § 4B1.2(a). Therefore, we reverse and remand for resentencing.

————————————————

---

[5]*Parson* also argues that U.S.S.G. § 4B1.2(a)(2) may have a meaning significantly different from the virtually identical language in 18 U.S.C. § 924(e)(2)(B). *Parson*, 955 F.2d at 871.