*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0266p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 05-6268

DARWIN E. VEACH,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 04-00084—Karen K. Caldwell, District Judge.

Argued: June 7, 2006

Decided and Filed: August 1, 2006

Before: DAUGHTREY and COLE, Circuit Judges; GRAHAM, District Judge.[*]

---

## COUNSEL

**ARGUED:** Bruce R. Bentley, ZOELLERS, HUDSON & BENTLEY, London, Kentucky, for
Appellant. David P. Grise, ASSISTANT UNITED STATES ATTORNEY, Lexington, Kentucky,
for Appellee. **ON BRIEF:** Bruce R. Bentley, ZOELLERS, HUDSON & BENTLEY, London,
Kentucky, for Appellant. David P. Grise, Charles P. Wisdom, Jr., ASSISTANT UNITED STATES
ATTORNEY, Lexington, Kentucky, for Appellee.

---

## OPINION

---

MARTHA CRAIG DAUGHTREY, Circuit Judge. The defendant, Darwin Veach, appeals
from his conviction and sentence for resisting a federal law enforcement officer and threatening to
assault and murder two federal law enforcement officers with intent to impede the performance of
their official duties. The district court determined that Veach was a career offender and thus
sentenced him to an effective prison term of 80 months. The defendant now asserts that the district
court erred in preventing him from presenting a diminished capacity defense, in restricting his cross-
examination of one of the victims, and in counting his prior conviction for a fourth offense of driving
under the influence of intoxicants as a crime of violence. Because we conclude that the district
judge improperly restricted Veach's ability to present a diminished capacity defense to a specific-

---

[*] The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by
designation.

1

intent crime, we reverse the defendant's convictions for threatening to assault and murder law enforcement officers with intent to impede the performance of their official duties and remand this matter for retrial on those counts. Because we are remanding this case for a new trial, we address the remaining evidentiary and sentencing issues merely as a matter of guidance to the district court.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

There is no dispute concerning the relevant facts underlying the defendant's convictions. The record establishes that Veach's automobile was involved in a collision with another vehicle in Cumberland Gap National Historic Park. When United States Park Rangers Greg Mullin and Karen Bradford arrived on the scene, they suspected that the defendant was intoxicated and performed various field sobriety tests and a portable breath test on Veach that confirmed their initial impressions.

While securing the defendant for transport, Ranger Mullin was forced to struggle with Veach, who "attempted to pull away from" Mullin. The defendant also pulled the officer "down to one knee, causing an abrasion on that knee." Furthermore, as Mullin drove the defendant to the police station for booking, Veach stated, "I'm going to mess with you; if I get a shot at you[,] God dammit I'll kill you, I will; and I'm going to cut your head off." Veach was later transported to a local hospital for treatment of a facial cut, and once there he again threatened to decapitate one of the rangers. On the way back to the detention center, Veach threatened Mullin and Bradford once more, saying, "I will put a fuckin' bullet straight in your fuckin' head. The sheriff won't always be in office and 15 years later I'll walk up on you . . . . I'm going to drive you'ans all straight to hell."

Based on these facts, the jury convicted Veach of one count of resisting a federal law enforcement officer, 18 U.S.C. § 111(a)(1), and two counts of threatening to assault and murder a federal law enforcement officer with intent to impede such officer in the performance of official duties, 18 U.S.C. § 115(a)(1)(B). At sentencing, the district judge ruled that Veach's prior convictions for second-degree manslaughter and for a fourth offense of driving under the influence within five years were crimes of violence that subjected the defendant to sentencing as a career offender. Consequently, the court imposed prison terms of 12 months, 80 months, and 80 months for the respective offenses, to be served concurrently.

## II. *DISCUSSION*

### A. Evidentiary Challenges

On appeal, Veach first challenges two evidentiary rulings made by the district court. Specifically, he maintains that the court erred in granting the government's motion *in limine* to exclude presentation of a defense of diminished capacity based upon voluntary intoxication. Veach also contends that the district court erred in preventing him from cross-examining Ranger Bradford regarding her perception of the threats made by the defendant.

### 1. Presentation of a Diminished Capacity Defense

As we have held, "[i]t is well established that intoxication, whether voluntary or involuntary, may preclude the formation of specific-intent and thus serve to negate an essential element of certain crimes." *United States v. Newman*, 889 F.2d 88, 92 (6th Cir. 1989). It is, however, only "the mens rea of a specific-intent crime" that may be negated by a diminished capacity or voluntary intoxication defense; such defenses have no applicability to general intent crimes. *See United States v. Gonyea*, 140 F.3d 649, 650 (6th Cir. 1998) (citations and footnote omitted). To determine whether the district judge properly excluded the defendant's testimony relating to his level of

intoxication at the time of the crimes charged, it is thus necessary to decide, first, whether 18 U.S.C. §§ 111(a)(1) and 115(a)(1)(B) are general or specific intent offenses.

In *Gonyea*, we highlighted the differences between the two classes of crimes:

[A] specific intent crime is one that requires a defendant to do more than knowingly act in violation of the law. The defendant must also act with the purpose of violating the law. The violation of a general intent crime, by contrast, requires only that a defendant intend to do the act that the law proscribes.

*Id.* at 653 (citations and internal quotation marks omitted).

Pursuant to the provisions of 18 U.S.C. § 111(a)(1):

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with [any officer or employee of the United States or of any agency in any branch of the United States Government, or any person assisting such an officer or employee] while engaged in or on account of the performance of official duties . . . shall, where the acts . . . constitute only simple assault, be fined . . . or imprisoned not more than one year, or both . . . .

This statutory provision clearly indicates that any violator will be punished solely for the forcible assault on, resistance to, opposition to, impedance of, intimidation of, or interference with a designated individual. No other intent on the part of a defendant need be shown; the mere intentional performance of the prohibited act is sufficient to subject the perpetrator to federal criminal liability. The plain language of the statute thus supports the district judge's conclusion that voluntary intoxication or diminished functional capacity is not a viable defense to a charge of a violation of § 111.

Indeed, we have previously recognized as much in *United States v. Kimes*, 246 F.3d 800, 808-09 (6th Cir. 2001), in which we examined the language and overall purpose of the statute before concluding "that the crime established in 18 U.S.C. § 111(a) is a general intent crime as to which evidence of diminished capacity is not admissible." Because *Kimes* is thus the law of the circuit, the district court was not at liberty to disregard that holding and this panel may not now overturn that decision absent intervening Supreme Court direction or an en banc decision of this court. *See*, *e.g.*, *United States v. Seltzer*, 794 F.2d 1114, 1123 (6th Cir. 1986).

Unlike 18 U.S.C. § 111, however, § 115(a)(1)(B) does contain additional language not found in the former general intent statute. That latter statutory provision reads:

Whoever threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under [18 U.S.C. § 1114], *with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties*, shall be punished as provided in subsection (b). (Emphasis added.)

Despite the clear linguistic differences in the two statutes, the government argues that § 115, like § 111, contains no element of specific intent. In support of its position, the government cites the holding of the Eleventh Circuit in *United States v. Berki*, 936 F.2d 529, 532 (11th Cir. 1991), "that 18 U.S.C.A. section 115(a)(1)(B) (West Supp. 1990) is not a specific intent crime." *See also United States v. Ettinger*, 344 F.3d 1149, 1157 (11th Cir. 2003). *But see United States v. Stewart*, 420 F.3d 1007, 1017 (9th Cir. 2005) ("Moreover, by its express language, section 115(a)(1)(B)

contains a specific intent element: it punishes only threats made regarding enumerated officials with the intent to impede, intimidate, interfere with, or retaliate against such officials on account of the officials' performance of official duties.").

The Sixth Circuit has not spoken directly to this issue in a published opinion. Nevertheless, we have recognized "that Congress is fully cognizant of the general intent/specific intent dichotomy," *Kimes*, 246 F.3d at 808, and that "[w]here a statute does not specify a heightened mental element such as specific intent, general intent is *presumed* to be the required element." *United States v. DeAndino*, 958 F.2d 146, 148 (6th Cir. 1992) (quoting *United States v. Brown*, 915 F.2d 219, 225 (6th Cir. 1990)). Conversely, when the legislative branch "intends to create a specific intent crime, Congress explicitly says so." *Kimes*, 246 F.3d at 808. For example:

> 18 U.S.C. § 113(a)(1), which provides that "assault *with intent* to commit murder" in the special maritime and territorial jurisdiction of the United States is a crime punishable by up to 20 years imprisonment. (Emphasis supplied.) Under 18 U.S.C. § 113(a)(3), similarly, "[a]ssault with a dangerous weapon, *with intent* to do bodily harm, and without just cause or excuse . . . ." is made punishable by up to 10 years imprisonment. (Emphasis supplied.)

*Id.* In *Kimes*, we also discussed the situation in *Gonyea*, noting that in that case:

> . . . the trial court, believing that bank robbery in violation of the first paragraph of 18 U.S.C. § 2113(a) is a general intent crime, had declined to let a defendant charged under that paragraph present evidence of his diminished mental capacity. The first paragraph of 18 U.S.C. § 2113(a) begins thus:
>
>> "Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . ."
>
> In contrast, the second paragraph begins thus:
>
>> "Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, *with intent to commit* in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny . . . ." (Emphasis supplied.)
>
> Based on the differing language in the two paragraphs, we upheld the district court's evidentiary ruling: because "Congress showed 'careful draftsmanship' by including an intent requirement in the second paragraph, but not the first paragraph, of § 2113(a), we hold that the first paragraph of § 2113(a) describes a general intent crime." *Gonyea*, 140 F.3d at 654 (Citations omitted.)

*Id.* at 808-09.

By the same token, the additional, specific intent requirement in 18 U.S.C. § 115(a)(1)(B) differentiates that statute from 18 U.S.C. § 111(a)(1). Not only does § 115(a)(1)(B) require the

government to prove beyond a reasonable doubt that the defendant threatened certain action against a government official but also that the defendant made such a threat for the specific purpose of interfering with the performance of official duties or of retaliating for the performance of such duties. Indeed, we have assumed the requirement of specific intent in numerous opinions, both published and unpublished, involving § 115 prosecutions. *See, e.g.*, *United States v. Snelenberger*, 24 F.3d 799, 803 (6th Cir. 1994) (holding that the second part of 18 U.S.C. § 115(a)(1)(B) requires that a threat "be made with the intent to retaliate against the judge after the judge has acted"), *overruled on other grounds in United States v. Hayes*, 227 F.3d 578, 586 (6th Cir. 2000); *United States v. Andrews*, No. 00-6412, 2002 WL 31205333 at *3 (6th Cir. Oct. 2, 2002) (requiring the government to prove in a § 115 prosecution that "(1) the defendant conveyed a threat of physical harm to a federal official or his family; (2) *the threat was intended as an act of retaliation against the federal official*; and (3) this threat could reasonably be construed by the person in receipt of the threat to be actually carried out" (emphasis added)); *United States v. Williams*, No. 98-2010, 2000 WL 32006 at *2 (6th Cir. Jan. 3, 2000) (recognizing that, to be in violation of 18 U.S.C. § 115(a)(1)(B), "the defendant must act 'with the intent to retaliate against a government employee on account of the performance of his or her official duties'"); *United States v. Kamen*, Nos. 98-5170/5171, 1999 WL 232685 at *2 (6th Cir. Apr. 16, 1999) (ratifying the district court's finding in a § 115(a)(1)(B) prosecution that the defendant "threatened to assault or murder a federal law enforcement officer *with the specific intent* to intimidate [an Assistant United States Attorney] on account of her performance or to impede her in her performance of her official duties") (emphasis added); *United States v. Marcilous*, No. 97-2108, 1998 WL 964240 at **1-2 (6th Cir. Dec. 29, 1998) (finding sufficient evidence of defendant's specific intent "to threaten his supervisors in retaliation for the performance of their duties"); *United States v. Conner*, No. 94-6657, 1995 WL 734479 at *1 (6th Cir. Dec. 11, 1995) (finding sufficient evidence that the defendant's communication of a threat to a federal law enforcement officer was in retaliation for the officer's performance of his official duties).

Both the actual language of the statute itself and our allusions to the requirements for conviction under that provision lead to the inescapable conclusion that 18 U.S.C. § 115(a)(1)(B) contains a specific intent element that must be proven by the government beyond a reasonable doubt. Consequently, because a defendant must possess a particular *mens rea* in order to be guilty of the crimes described in that statute, in this case Veach should have been allowed to present evidence to the jury that he was too intoxicated at the time of his arrest to form the requisite specific intent. Instead, the district judge specifically forbade the defendant from "making intoxication . . . a defense" or from attempting to show "that he could not form an opinion."

That ruling was in error and prevented Veach from challenging effectively the government's assertion that it had proved all essential elements of a charge under 18 U.S.C. § 115(a)(1)(B) beyond a reasonable doubt. Because the admitted evidence thus does not establish all offense elements, we must reverse Veach's § 115 convictions and remand this matter to the district court for retrial on those charges only.

**2. Restriction on Cross-Examination of Ranger Bradford Regarding Threats**

During the presentation of the government's case, the prosecution asked Ranger Karen Bradford whether she took as a threat the defendant's comment to her that "I will put a fucking bullet straight into your head and won't give a fucking thought about it." Bradford answered in the affirmative and further indicated that she was intimidated by the comment because, as she testified, "I take all threats seriously, especially if I've arrested someone and deprived them of freedom." In response to that testimony, defense counsel sought to cross-examine Bradford about her apparent lack of apprehension the following day when Veach returned to her office to retrieve his driver's license. The district judge sustained an objection to that line of questioning, however. Veach now contends that he should have been allowed to pursue his inquiry into whether Bradford truly felt threatened

by the defendant's drunken comments. We review such an evidentiary ruling by the district court for an abuse of discretion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997).

Here, the district judge restricted questioning by which defense counsel sought to elicit evidence concerning Bradford's reaction to a situation that occurred the day after the threat was communicated, holding that the defendant "had clearly recovered and was under control." The judge held that this line of cross-examination was not relevant to "what was going on through the process of taking Mr. Veach into custody." Nevertheless, the court did permit defense counsel, in an attempt to demonstrate that Bradford's fear was unreasonable, to cross-examine the witness about the fact that, shortly after arresting Veach, she let the defendant out of the car and readjusted his handcuffs, that Veach was physically restrained at the time of the threat, that he was obviously intoxicated, and that he had initially been "relatively cooperative."

We conclude that the the the district court's limitation on cross-examination would not have been in error had the threats made by the defendant been limited to his intent to harm the rangers at the time of his arrest. But the defendant's declarations evidenced an intention to inflict future harm on the rangers ("15 years later I'll walk up on you . . [and] I'm going to mess with you if I get a shot at you"). It therefore became relevant that less than 24 hours later, Veach exhibited no hostility or aggression toward Karen Bradford. Were this ruling by the district court the only error in the record, it might well be considered harmless. But in view of the need to retry the defendant, we conclude that the original ruling should be reconsidered by the district court in the event that the defendant seeks to cross-examine Ranger Bradford on this ground.

## B. Sentencing Challenge

In his final appellate issue, Veach contends that the district court erred in sentencing him as a career offender. He insists that one of the predicate convictions used to justify his career offender status – driving under the influence (fourth offense) – is not a crime of violence and thus cannot support the enhanced punishment imposed in this case.

Pursuant to the provisions of § 4B1.1(a) of the United States Sentencing Guidelines, a defendant will qualify as a "career offender" if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Veach does not dispute the facts that he was over the age of 18 when he committed the instant offense, that one of the instant offenses of conviction (threatening to murder a federal law enforcement officer with intent to impede the performance of official duties) can be classified as a "crime of violence," or that his prior conviction for manslaughter is also a "crime of violence." Consequently, the sole sentencing issue remaining to be resolved is whether Veach's driving under the influence (fourth offense) conviction also constitutes a "crime of violence" for guidelines purposes so as to serve as the second of the required "two prior felony convictions of . . . a crime of violence."

The term "crime of violence" has been specifically defined in § 4B1.2(a) of the guidelines to mean:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (1)      has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2)      is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Furthermore, application note 1 to the commentary to that provision further defines the term by including examples of "crimes of violence." The application note states:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

U.S. SENTENCING GUIDELINES MANUAL § 4B1.2, comment. (n.1). Thus, considering the relevant guidelines provision and the relevant portion of its application note, we can find Veach's conviction for driving under the influence (fourth offense) to be a "crime of violence" only if we determine that the conduct involved in the commission of the offense, by its nature, presents a serious potential risk of physical injury to another.

In arguing that a fourth offense of driving under the influence does *not* constitute a "crime of violence," Veach points the court to the United States Supreme Court's opinion in *Leocal v. Ashcroft*, 543 U.S. 1, 9-10 (2004), in which the Court determined that driving under the influence is not a "crime of violence" as that term is defined in 18 U.S.C. § 16. In that statute, however, the definition of "crime of violence" encompasses only offenses involving the use of *physical force* against another person. Indeed, in *Leocal*, the Court specifically noted:

> [Section] 16(b) plainly does not encompass all offenses which create a "substantial risk" that injury will result from a person's conduct. The "substantial risk" in § 16(b) relates to the use of force, not to the possible effect of a person's conduct. Compare § 16(b) (requiring a "substantial risk that physical force against the person or property of another may be used") with United States Sentencing Commission, Guidelines Manual § 4B1.2(a)(2) (Nov. 2003) (in the context of a career-offender sentencing enhancement, defining "crime of violence" as meaning, *inter alia*, "conduct that presents a serious potential risk of physical injury to another"). The risk that an accident may occur when an individual drives while intoxicated is simply not the same thing as the risk that the individual may "use" physical force against another in committing the DUI offense.

*Id.* at 10 n.7 (citations omitted). The Court thus realized that the guidelines definition of the relevant term encompassed additional conduct that the statutory definition does not.

The defendant also directs our attention to the Eighth Circuit decision in *United States v. Walker*, 393 F.3d 819 (8th Cir. 2005), *analysis rejected by United States v. McCall*, 439 F.3d 967, 971 (8th Cir. 2006). In that case, a sister circuit held that the Iowa offense of "operating while intoxicated" is not a "crime of violence" for sentencing purposes because the violation does not "otherwise involve conduct that presents a serious potential risk of physical injury to another," as required by § 4B1.2(a)(2) of the guidelines. *See id.* at 824. In reaching that conclusion, the court employed the statutory interpretation canons of *noscitur a sociis* and *ejusdem generis*, which "provide that the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Id.* Thus, according to the Eighth Circuit, the phrase in § 4B1.2(a)(2) of the guidelines that "crimes of violence" include offenses that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another" brings within the provision's coverage only crimes similar to the previously-listed offenses of burglary, arson, extortion, and use of explosives. *See id.* Because even a fourth conviction for driving under the influence does not rise to such a level, the court refused to consider operating while intoxicated a "crime of violence."

Every other circuit to have addressed the issue, however, has found driving under the influence convictions to constitute "crimes of violence." *See*, *e.g.*, *United States v. Moore*, 420 F.3d 1218, 1221 (10th Cir. 2005) ("Driving while intoxicated clearly presents 'serious potential risk of physical injury to another' and therefore is a crime of violence under § 4B1.2(a)(2)."); *United States v. DeSantiago-Gonzalez*, 207 F.3d 261, 264 (5th Cir. 2000) ("the very nature of the crime of DWI presents a 'serious risk of physical injury' to others, and makes DWI a crime of violence"); *United States v. Rutherford*, 54 F.3d 370, 376-77 (7th Cir. 1995) ("Drunk driving is a reckless act that often results in injury, and the risks of driving while intoxicated are well-known. This is sufficient to satisfy the 'serious risk' standard of the 'otherwise' clause."). The *Moore* decision even explains why the Eighth Circuit's *Walker* rationale, although initially appealing, is ultimately flawed. As the Tenth Circuit noted:

> At the outset, the analysis in *Walker* ignores the more flexible articulation of § 4B1.2's "crime of violence" definition explained in its commentary section. *See* USSG § 4B1.2, cmt. n.1. There, this "or otherwise" language is removed, and the inclusion of offenses with conduct posing a serious potential risk of physical injury is delinked from any preceding specific sequence of offenses. *Id.* Instead, the commentary gives a long list of crimes of violence ranging from murder to kidnapping to extortion and then, in a separate sentence, explains that "[o]ther offenses are included as 'crimes of violence' if . . . the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another." *Id.*

*Moore*, 420 F.3d at 1221-22.

Despite the arguments of the defendant and the Eighth Circuit to the contrary, the *Moore-DeSantiago-Gonzalez-Rutherford* rationale provides the more persuasive position on this sentencing issue. The "crime of violence" enhancement involved in this appeal is a creature of the sentencing guidelines and, as such, should adhere to definitions and explanations set forth in that sentencing scheme. Consequently, a conviction for driving under the influence of intoxicants can properly be considered a "crime of violence" if it: (1) is a felony punishable by a term of imprisonment of at least one year; and (2) involves conduct presenting a serious potential risk of physical injury to another individual. Without question, a fourth conviction for driving under the influence is considered in Kentucky to be a felony offense punishable by imprisonment of one to five years. *See* K.R.S. §§ 189A.010(5)(d); 532.020(1)(a). Equally undisputed is the fact that driving while under the influence of intoxicants presents, at the very least, a serious potential risk that the driver will cause

physical injury to another person.  Under the sentencing system established by the guidelines, therefore, the defendant's fourth Kentucky conviction within a five-year period for driving under the influence should be considered a "crime of violence" that subjects Veach to sentencing as a career offender.

### III.  *CONCLUSION*

For the reasons set out above, we REVERSE the judgment of the district court on Counts 1 and 2 of the indictment and REMAND this case for retrial on those charges only.  The remainder of the district court's judgment is AFFIRMED.