FILED
United States Court of Appeals
Tenth Circuit

June 16, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LARRY BEGAY,

Defendant - Appellant.

No. 05-2253

(D. New Mexico)

(D.C. No. 1:04-CR-2245-WJ-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **HARTZ**, and **McCONNELL**, Circuit Judges.

---

In *Begay v. United States*, 128 S. Ct. 1581 (2008), the Supreme Court

reversed that portion of our decision in *United States v. Begay*, 470 F.3d 964

(10th Cir. 2006), holding that Mr. Begay's conviction of felony driving while

intoxicated is a violent felony under 18 U.S.C. § 924(e).  We therefore vacate that

portion of our prior decision so holding and reinstate the remainder of the court's

December 12, 2006, opinion.  We REMAND to the district court with

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

instructions to vacate the sentence and resentence Mr. Begay subject to our prior decision as modified by the Supreme Court.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**December 12, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

      v.

LARRY BEGAY,

       Defendant - Appellant.

No. 05-2253

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. CR-04-2245 WJ)**

Margaret A. Katze, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant - Appellant.

David N. Williams, Assistant United States Attorney, (David C. Iglesias, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.

Before **LUCERO**, **HARTZ**, and **McCONNELL**, Circuit Judges.

**HARTZ**, Circuit Judge.

Larry Begay was sentenced to 188 months' imprisonment after pleading guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court determined that each of Mr. Begay's three

previous felony convictions for driving while intoxicated was a "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). *See United States v. Begay*, 377 F. Supp. 2d 1141 (D.N.M. 2005). On appeal Mr. Begay contends that (1) felony driving while intoxicated is not a violent felony under the ACCA, and (2) the district court violated *United States v. Booker*, 543 U.S. 220 (2005), in concluding that it could not impose a sentence below the Guidelines range if a sentence within that range would be reasonable. We have jurisdiction under 28 U.S.C. § 1291 and hold that (1) felony driving while intoxicated is a violent felony under the ACCA, and (2) a district court may impose a sentence outside the Guidelines range even if a sentence within the range would be reasonable. Accordingly, we affirm in part, reverse in part, and remand for resentencing.

## I.    BACKGROUND

According to the presentence report (PSR), in September 2004 Mr. Begay threatened to shoot his sister, Annie Begay, with a rifle if she did not give him money. When she informed him that she did not have any money, he repeatedly pulled the trigger, but the rifle did not fire. The next morning she called the Navajo Department of Law Enforcement while he was asleep. Officers responded and found a .22 caliber rifle under a mattress inside his room.

Mr. Begay pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). According to the PSR, Mr. Begay had 12

previous convictions for driving while intoxicated (DWI).  Three of these

convictions were felonies under New Mexico law, which makes the fourth and

each subsequent DWI conviction a felony.  *See* N.M. Stat. Ann.

§ 66-8-102(G)–(J) (1978) ("Upon a fourth conviction pursuant to this section, an

offender is guilty of a fourth degree felony and . . . shall be sentenced to a term of

imprisonment of eighteen months . . . .  Upon a fifth conviction . . . an offender . .

. shall be sentenced to a term of imprisonment of two years . . . .").  The district

court determined that a felony DWI is a "violent felony" under the ACCA.  With

convictions for three such felonies, Mr. Begay was subject to a mandatory

minimum sentence of 15 years' imprisonment under the ACCA, *see*

18 U.S.C. § 924(e)(1), and his offense level under the United States Sentencing

Guidelines (USSG) was 34, *see* USSG § 4B1.4(a) ("A defendant who is subject to

an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed

career criminal."); *id*. § 4B1.4(b)(3)(A) (setting offense level for armed career

criminal at 34 "if the defendant used or possessed the firearm or ammunition in

connection with . . . a crime of violence").  A three-level downward adjustment

for acceptance of responsibility, *see id*. § 3E1.1, combined with Mr. Begay's prior

convictions, which placed him in criminal-history category VI, resulted in a

sentencing range of 188 to 235 months.

   At sentencing, Mr. Begay contended that the Guidelines range was higher

than necessary to accomplish the goals set forth in the list of sentencing factors in

18 U.S.C. § 3553(a). He requested a sentence of 180 months, the minimum permitted under the ACCA. His counsel noted that Mr. Begay had been plagued by alcoholism "for the better part of his life," and that "he has almost no other conviction other than drinking and—while driving, and also, that his DWI cases do not—have not resulted in physical injury to another." R. Vol. III at 10. He also noted that Mr. Begay's father and brother had died in a car accident and Mr. Begay "had assumed almost completely the role of caretaker in the family compound. . . . He was responsible for taking care of all the livestock, for hauling wood and water for the family." *Id*. at 11. The district court considered each of the sentencing factors in 18 U.S.C. § 3553(a) and concluded that "in order for me to go below the guidelines, I have to make a finding that, under the sentencing factors, the sentence of 188 months is unreasonable." *Id*. at 15. The court continued:

> Again, taking a look at the guidelines, the way they're formulated and how they apply, how the Sentencing Commission has formulated the calculation of the guidelines if the armed career criminal enhancement applies, I cannot make a finding that 188 months is unreasonable under 18 U.S.C., under the sentencing factors of 18 U.S.C. 3553(a).

*Id*. at 16. The court sentenced Mr. Begay to 188 months' imprisonment and adjourned.

## II.    DISCUSSION

### A.    Violent Felony

**1.**

The relevant portion of the ACCA definition of *violent felony* is:

*any crime punishable by imprisonment for a term exceeding one year*, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, *that—*

> (I) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added).  To determine whether an offense is a "violent felony" under the ACCA, we follow the categorical approach set forth by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005); that is, we look only to the statutory definition of the crime.  *See United States v. Moore*, 420 F.3d 1218, 1220 (10th Cir. 2005).  Mr. Begay's three felony convictions were for violations of N.M. Stat. Ann. § 66-8-102A, which states:  "It is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state."  Mr. Begay contends that this crime is not a "violent felony" under the ACCA.

We review questions of statutory interpretation de novo. *See Moore*, 420 F.3d at 1220.

Mr. Begay argues that the "otherwise" clause in § 924(e)(2)(B)(ii) embraces only offenses "that present[] a serious potential risk of physical injury to another" in the same way as the specifically enumerated crimes—burglary, arson, extortion, or crimes involving explosives. Because DWI is dissimilar to these enumerated crimes, he concludes, it is not a violent felony under the ACCA.

Mr. Begay cites as authority the Eighth Circuit's opinion in *United States v. Walker*, 393 F.3d 819 (8th Cir. 2005), *overruled by United States v. McCall*, 439 F.3d 967 (8th Cir. 2006) (en banc). The issue in *Walker* was "whether Iowa's offense of Operating While Intoxicated ('OWI') is a 'crime of violence' under the United States Sentencing Guidelines." 393 F.3d at 820. The district court had ruled that Mr. Walker was a career offender under USSG § 4B1.1(a), which provides that a defendant is a career offender if he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." The Guidelines definition of *crime of violence* appears in USSG § 4B1.2(a):

> The term "crime of violence" means *any offense* under federal or state law, *punishable by imprisonment for a term exceeding one year, that*–
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is *burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

(emphasis added). As *Walker* noted, "The portions of U.S.S.G. § 4B1.2 at issue are identical to the corresponding portions of 18 U.S.C. § 924(e)(2)(B), except that the guideline provision adds the phrase *of a dwelling* after the word *burglary*." *Walker*, 393 F.3d at 823. It then said, "Since the pertinent language is substantially identical, . . . we will construe [the] guideline language at issue to be consistent with the corresponding language in the [ACCA]." *Id*. at 823.

> The court began its analysis of the definition as follows:

> The "otherwise" clause of § 4B1.2[(a)](2) follows an enumeration of specific crimes: burglary of a dwelling, arson, extortion, and crimes that involve the use of explosives. Where general words follow specific words in a statutory enumeration, the established interpretative canons of *noscitur a sociis* and *ejusdem generis* provide that the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.

*Id*. at 824. This conclusion, the court stated, "is reinforced by the legislative history of the statute from which the guideline was derived," the ACCA. *Id*. After quoting two paragraphs from the relevant Report of the House Committee on the Judiciary, it observed:

> For present purposes, the most important sentence of this lengthy quotation is the last one, which states that the legislation would add "burglary, arson, extortion, use of explosives and *similar crimes* as predicate offenses where the conduct involved presents a serious risk of injury to a person." . . . Thus, the legislative history reinforces the view that the intent of the "otherwise" clause in 18 U.S.C.

-7-

§ 924(e)(2)(B)(ii) was to encompass crimes similar to burglary, arson, extortion, and crimes that involve the use of explosives.

*Id.* at 824-25 (quoting H.R. Rep. No. 99-849, at 3 (1986)).

*Walker* also relied on language in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), in which the Supreme Court held that the offense of driving under the influence (DUI) under Florida law was not a "crime of violence" as defined in 18 U.S.C. § 16, and therefore not an "aggravated felony" under § 101(a)(43)(F) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F). Section 16 defines *crime of violence* as

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The court in *Walker* quoted the following from *Leocal*:

> In construing both parts of § 16, we cannot forget that we ultimately are determining the meaning of the term "crime of violence." The ordinary meaning of this term, combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes that cannot be said naturally to include DUI offenses. *Cf. United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992) (Breyer, C.J.) (observing that the term "violent felony" in 18 U.S.C. § 924(e) . . . "calls to mind a tradition of crimes that involve the possibility of more closely related, active violence"). Interpreting § 16 to encompass accidental or negligent conduct would blur the distinction between the "violent" crimes Congress sought to distinguish for heightened punishment and other crimes.

*Leocal*, 543 U.S. at 11.  Deeming it particularly important that the Supreme Court had "cited with approval [a] passage from then Chief Judge Breyer's opinion in *Doe* stating that drunk driving should not be considered as a 'violent felony' under 18 U.S.C. § 924(e)," the court in *Walker* quoted the pertinent passage from the future Justice's opinion holding that possession of a firearm is not a "violent felony" under the ACCA:

> [T]o read the statute . . . to cover firearm possession [] would also bring within the statute's scope a host of other crimes that do not seem to belong there.  To include possession [of a firearm], one would have to focus upon the risk of direct *future* harm that present conduct poses.  But how could one then exclude, say, drunken driving or unlawful transportation of hazardous chemicals or other risk-creating crimes very unlike the burglary, arson, extortion, and explosives use that the statute mentions?  There is no reason to believe that Congress meant to enhance sentences based on, say, proof of drunken driving convictions.  Rather, we must read the definition in light of the term to be defined, "violent felony," which calls to mind a tradition of crimes that involve the possibility of more closely related, active violence.

*Walker*, 393 F.3d at 826 (ellipsis and brackets in *Walker*) (quoting *Doe*, 960 F.2d at 225).

The *Walker* court reasoned:  "It is common sense that OWI is not the same kind of offense as the crimes specifically listed in U.S.S.G. § 4B1.2(a)(2) . . . .  The latter are hostile, aggressive acts.  They create a significant risk of violent confrontation between the criminal and the victim or the law enforcement officer."  *Id*. at 825.  It concluded, "Since drunken driving—or more precisely,

-9-

operating while intoxicated—is very unlike the crimes specifically named in

§ 4B1.2(a)(2), under the rule of *ejusdem generis*, OWI is not encompassed by the

general language that follows." *Id*. at 826.

Finally, *Walker* stated that its interpretation of the definition of *crime of*

*violence* complied with "the elementary canon of construction that a statute

should be interpreted so as not to render one part inoperative." *Id*. (internal

quotation marks omitted).

> Here, the government construes U.S.S.G. § 4B1.2(a)(2) to encompass
> all conduct that presents a serious potential risk of physical injury to
> another.  That construction not only ignores the list of specific
> crimes that precede this general language and therefore modify it,
> that construction also would render the list of specific crimes
> redundant or superfluous.

*Id*. at 827.  In addition, said the court, the government's interpretation would

> render superfluous the distinction in § 4B1.1(a) and § 4B1.2 between
> a felony that is a crime of violence and a felony that is a controlled
> substance offense. . . .  On the government's argument, the inclusion
> of controlled substance offenses as separately named predicate
> offenses for career offender status would be superfluous because
> those offenses involve a substantial risk of physical injury to another
> and therefore would be included in the "otherwise" provision of
> § 4B1.2(a).  Our interpretation of § 4B1.2(a)(2), however, preserves
> the distinction between subsections (a)(1), (a)(2), and (b); and it
> avoids a construction that renders any part of § 4B1.2 superfluous.

*Id*.  Mr. Begay raises these same arguments in hope that this court will reach the

same conclusion.

The government contends that we are bound by our rejection of *Walker* in

*Moore*, 420 F.3d at 1221-22.  *Moore* held that "felony [driving under the

-10-

influence] is a crime of violence under USSG § 4B1.2." *Id.* at 1220. "Driving while intoxicated," we stated, "clearly presents a 'serious potential risk of physical injury to another.'" *Id.* at 1221. If we were addressing whether DWI is a "crime of violence" under § 4B1.2 of the Guidelines, the Government would be correct. But on this appeal we are not applying that guideline; rather, we are construing a provision under the ACCA.

At first blush this seems to be a distinction without a difference, because the language we are considering is virtually identical to the language considered in *Moore*. *Moore*, however, relied on more than the plain language of § 4B1.2. It also pointed to commentary to that Guidelines provision. We observed that "the analysis in *Walker* ignores the more flexible articulation of § 4B1.2's 'crime of violence' definition explained in its commentary section." *Id*. We noted that in that commentary,

> this "or otherwise" language is removed, and the inclusion of offenses with conduct posing a serious potential risk of physical injury is delinked from any preceding specific sequence of offenses. Instead, the commentary gives a long list of crimes of violence ranging from murder to kidnapping to extortion and then, in a separate sentence, explains that "[o]ther offenses are included as 'crimes of violence' if . . . the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another."

*Id*. at 1221-22 (internal citation omitted). Ordinarily, such "commentary is a binding interpretation of the phrase 'crime of violence'" in the Guidelines.

-11-

*Stinson v. United States*, 508 U.S. 36, 47 (1993). But, of course, Guidelines

commentary is not binding with respect to the ACCA, even if the language in that

statute is identical to Guidelines language interpreted in the commentary. Thus,

*Moore* is not controlling.

Nevertheless, we believe that *Moore*'s construction of § 4B1.2 is also

correct for the ACCA. We reach the same conclusion as the en banc decision of

the Eighth Circuit in *McCall*, 439 F.3d at 969, which overturned *Walker*, and the

decisions of the other circuits to address the language at issue, *see United States*

*v. Sperberg*, 432 F.3d 706 (7th Cir. 2005) (felony DWI is a violent felony under

the ACCA)*, United States v. DeSantiago-Gonzales*, 207 F.3d 261, 264 (5th Cir.

2000) (DUI is a crime of violence under USSG § 4B1.2(a)(2)); *United States v.*

*Veach*, 455 F.3d 628 (6th Cir. 2006) (same); *United States v. McGill*, 450 F.3d

1276, 1280 (11th Cir. 2006) (same).

*McCall* addressed "whether a felony DWI conviction in Missouri is a

violent felony under the 'otherwise involves' provision in § 924(e)(2)(B)(ii)."

439 F.3d at 969. The court rejected *Walker*'s reliance on *Leocal*, noting that

*Leocal*

> held that the plain language of [18 U.S.C.] § 16(b) . . . limits that
> statute to "violent, active crimes" because the word "used"
> incorporates a *mens rea* component and thus requires that an
> offender's conduct be more than "merely accidental or negligent."

By contrast, as the *Leocal* opinion noted, [543 U.S.] at 10 n.7[1], the "otherwise involves" provision in § 924(e)(2)(B)(ii) is not so limited. It focuses on "conduct that *presents* a serious potential risk of physical injury to another," not on the intent of the offender.

*Id*. at 971.

The *McCall* court also thought that *Walker*'s reliance on *noscitur a sociis* and *ejusdem generis* was misplaced, because "[w]hen a statute's plain language is this clear, it is controlling, . . . without the need to refer to [these] canons of construction . . . ." *Id.* Likewise, it said, "contrary hints in the legislative history" could not overcome the clear statutory language, *id.*, and in any event, that history undermines, rather than supports *Walker*'s reliance on canons of construction. *McCall* explained:

> [T]he enumerated crimes and the word "otherwise" were *added* to the "involves conduct" language. The form of the addition made the "otherwise involves" provision look like a catchall when in fact it was initially the operative provision. Adding the enumerated crimes served the obvious purpose of including all prior convictions for

---

[1]Footnote 7 in *Leocal* states:

Thus, § 16(b) plainly does not encompass all offenses which create a "substantial risk" that injury will result from a person's conduct. The "substantial risk" in § 16(b) relates to the use of force, not to the possible effect of a person's conduct. Compare § 16(b) (requiring a "substantial risk that physical force against the person or property of another may be used"), with [USSG] § 4B1.2(a)(2) . . . (in the context of a career-offender sentencing enhancement, defining "crime of violence" as meaning, *inter alia*, "conduct that presents a serious potential risk of physical injury to another"). The risk that an accident may occur when an individual drives while intoxicated is simply not the same thing as the risk that the individual may "use" physical force against another in committing the DUI offense.

-13-

> those crimes (burglary, arson, extortion, use of explosives), regardless of whether they present a serious potential risk of physical injury. Given this drafting sequence, it is wrong to infer that Congress intended to limit the "otherwise involves" provision to offenses that are similar to the enumerated add-ons.

*Id*. (internal citation omitted). (This circuit relied on this same legislative history in *United States v. King*, 479 F.2d 801, 803 (10th Cir. 1992), to declare that the crimes covered by the "otherwise" clause were not restricted to property crimes.)

Finally, addressing the First Circuit's opinion in *Doe*, *McCall* stated: "[T]hough we give due regard to contrary dicta in *Doe* which cautioned against construing the 'otherwise involves' provision to include risk-creating crimes 'that do not seem to belong there,' we conclude that we must construe the provision consistent with its plain language." *Id*. (internal citation omitted). Thus, the court concluded that "a violent felony within the meaning of § 924(e)(2)(B)(ii) includes any crime whose elements involve conduct that necessarily presents a serious potential risk of physical injury to another." *Id*.

**2.**

We agree with the holdings of *McCall* and the Seventh Circuit in *Sperberg*. First, DWI is encompassed by the natural meaning of the statutory language "any crime . . . that . . . involves conduct that presents a serious potential risk of physical injury to another." DWI certainly presents such a risk. Many would say that the gravest risk to their physical safety from criminal misconduct is from drunken drivers. When the dissent states that its construction of § 924(e) captures

-14-

"ordinary meaning," it is apparently referring not to the meaning of the above-quoted language but to the term defined by that language—namely, *violent felony*. Surely, however, we should look to the statutory definition of the term and begin with the ordinary meaning of that language rather than with the "ordinary meaning" of the term that Congress thought it advisable to define. Even less should we rely on the short title of the statute, "The Armed Career Criminal Act." The term *armed career criminal* appears nowhere in the United States Code, not even in the heading to any codified provision. It would be rather unusual, and disrespectful to legislative drafting, to let such a title override statutory language. The Racketeer Influenced and Corrupt Organizations chapter of the Criminal Code, 18 U.S.C. §§ 1961 et seq., is not interpreted by restricting its reach to entities that are described by the ordinary meaning of the title; instead, courts refer to the statutory language. We should do likewise here.

**3.**

Second, statutory purpose does not suggest a different definition. Section 924(e) is a punishment provision. It states that particularly severe sentences should be imposed on certain violators of 18 U.S.C. § 922(g) (which prohibits the possession of firearms by various classes of people, including, and typically, convicted felons)—namely, those who have repeatedly committed "violent felonies." But how to define such felonies for this purpose?

-15-

It is revealing that Congress could have adopted the same language that appears in the definition of *crime of violence* in the very same statutory section, 18 U.S.C. § 924(c)(3). (This statutory definition of *crime of violence* was added by Pub. L. No. 99-308 on May 19, 1986; it is a slight variation of the definition of *crime of violence* in 18 U.S.C. § 16, which was enacted in 1984. The definition of *violent felony* was added by Pub. L. No. 99-570 on October 27, 1986.) The definition of *crime of violence* is:

> an offense that is a felony and—
>
> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). A detailed examination of the differences between the definitions of *crime of violence* and *violent felony* is less important than the observation that there *are* differences. The reason for the differences must be that the definitions serve distinct purposes. The definition in § 924(c) was used to create a criminal offense. Under § 924(c)(1)(A), "any person who, during and in relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" is subject to punishment for a separate offense with a minimum sentence of five years' imprisonment. In other words, when someone while committing a "crime of violence" uses or carries a

-16-

firearm or possesses a firearm in furtherance of that crime, then that person has violated § 924(c). Undoubtedly, Congress defined *crime of violence* in this context to capture those crimes in which the danger is magnified by the firearm. It is not surprising that DWI is not a "crime of violence," because a firearm in the car does not increase the danger from the DWI offense. The dissent's view of *violent felony* would seem to conform to the purpose for defining *crime of violence* as it appears in § 924(c).

But the term *violent felony* serves a different purpose. The definition of *violent felony* in § 924(e)(2)(b) is used to identify persons who should be sentenced to very long terms for their present offense (possession of a firearm by a convicted felon) because of their criminal history. One may disagree with the choice, but it seems perfectly reasonable to include within the definition those who have a confirmed history of displaying contempt for human life or safety—those who, in the statutory language, have repeatedly committed felonies "involv[ing] conduct that presents a serious potential risk of physical injury to another." From this perspective, there is nothing remarkable about including felony DWI as a "violent felony."

In that regard, it is significant that the five circuits to address the issue have held that the term *crime of violence* in the Sentencing Guidelines, USSG § 4B1.2(a), which is defined identically to the term *violent felony* in § 924(e) (and, ironically, not identically to the statutory definition of *crime of violence* in

§ 924(c)) encompasses DWI.  To be sure, as already noted above, our construction of § 924(e) is not controlled by our decision in *Moore*, 420 F.3d 1218, interpreting USSG § 4B1.2(a), because *Moore* relied, at least in part, on Sentencing Commission commentary to the definition—commentary which is ordinarily binding in interpreting the Guidelines.  Nevertheless, one may well ask why the Sentencing Commission apparently adopted a definition in this context broad enough to include felony DWI.  And the answer must again lie in the context; the Sentencing Commission was considering what type of criminal history indicates that a person is so dangerous that a long term of incarceration is appropriate, regardless of the present offense of conviction.  That is essentially the same context for which Congress defined *violent felony*.  The Sentencing Commission's expertise on sentencing issues counsels us to defer to its construction of the same language confronting us in this case, even though the formal grounds for deference are inapplicable.

Thus, both the natural meaning of the statutory language and the apparent statutory purpose support a construction of the term *violent felony* to include felony DWI.  Neither the legislative history nor canons of construction persuade otherwise.  The only legislative history referred to by disputants on this issue is, as usual, of little help, nor do canons of construction assist in distinguishing between the constructions of the statutory language embraced by the parties on this appeal.

The legislative history relied upon by the opposing opinions in the Eighth Circuit's *McCall* case is a statement in a report by the House Committee on the Judiciary:

> [One] major question involved in these hearings was as to what violent felonies involving physical force against *property* should be included in the definition of "violent" felony. The Subcommittee agreed to add the crimes punishable for a term exceeding one year that involve conduct that presents a serious potential risk of physical injury to others. This will add State and Federal crimes against property such as burglary, arson, extortion, use of explosives and similar crimes as predicate offenses where the conduct involved presents a serious risk of injury to a person.

H.R. Rep. No. 99-849, at 3 (1986). To begin with, it is worth noting that the committee report does not say that the definition includes *only* the enumerated and similar crimes. The emphasis placed in legislative history on one effect of a statute does not mean that it has no others. For example, when Congress imposed limits on civil-rights suits by prisoners, Members repeatedly noted problems caused by suits challenging prison conditions. Nevertheless, the statutory language compelled us also to apply those limits on other civil-rights claims. *Cf. Robbins v. Chronister*, 435 F.3d 1238 (10th Cir. 2006) (rejecting contention that it would be absurd to apply the provision to civil-rights claim that arose before prisoner was incarcerated).

More importantly, the quoted committee report did not address the final language of the statute, but rather the version before addition to § 924(e)(2) of the language "is burglary, arson, or extortion, involves use of explosives, or

-19-

otherwise" (what I will call the "specific language").  In other words, it referred

only to the language "involves conduct that presents a serious potential risk of

physical injury to another" (what I will call the "general language").  One can

speculate from this history either (1) that the addition of the specific language

was to make clear (in case one disagreed with the committee report's view of the

general language) that the term *violent felony* encompassed the newly listed

offenses, from which one can infer that the general language is to be read broadly

as not being limited to crimes like the newly added offenses (the view of the

*McCall* majority) or (2) the addition of the specific language was to suggest that

the general language should be read narrowly to encompass only offenses similar

to the newly listed ones (the view of the *McCall* dissent).  I think the *McCall*

majority view is the more plausible, but it is impossible to know.  This ambiguous

history is not particularly persuasive either way.

Nor are canons of construction—in particular, *ejusdem generis* and *noscitur

a sociis*—helpful in this case.  These two canons state that a term in a series

should be understood in a limited sense that the term shares with the others in the

series.  The word to be so limited in the phrase "conduct that presents a serious

potential risk of physical injury to another" is the word *conduct*.  But how is the

meaning of *conduct* to be limited?  The statute itself says that the conduct must

"present[] a serious potential risk of physical injury to another."  One could

certainly say that this limitation is also a feature, perhaps the essential common

-20-

feature, of the enumerated crimes:   burglary, arson, extortion, and crimes involving the use of explosives.  But the dissent would be more restrictive.  "Each of the[] enumerated crimes," it says, "involves violent, aggressive conduct." Dissent Op. at 5.  It is questionable, however, whether opening an unlocked front door to a home for the purpose of committing larceny is "violent" conduct (and if not, should burglary count only if committed in a "violent" manner?); and one could reasonably describe felony DWI as both "violent" and "aggressive."  It is important to recognize the rather limited role of the *ejusdem* and *noscitur* canons in the enterprise of statutory construction.  The Supreme Court appears to reject their application as often as it embraces them.  *See, e.g.*, *Garcia v. United States*, 469 U.S. 70 (1984) (rejecting application of *ejusdem generis* when terms in series are each separated by "or").  And when it embraces them, one wonders whether they are critical to the Court's reasoning or makeweight additions to an argument based on deeper principles.  Whatever the value of these two canons, they cannot be used to make fine distinctions regarding what common features of terms in a series should be imposed on a more general term in the series.  I do not see how these canons can inform us that the word *conduct* should be restricted any more than it is by the statute's modifying phrase "that presents a serious potential risk of physical injury to another."

Moreover, there is a particularly compelling reason not to apply these two canons in this case.  The statutory language at issue defines *violent felony* as "any

-21-

crime punishable by imprisonment for a term exceeding one year . . . that . . . is burglary, arson, or extortion, involves use of explosives, or *otherwise* involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B) (emphasis added). Mr. Begay contends that "conduct that presents a serious potential risk of physical injury to another" should be interpreted as restricted to conduct *like* burglary, arson, etc. But the primary definition of *otherwise* is "in a different way or manner." Webster's Third New International Dictionary 1598 (2002). Thus, the otherwise clause is best understood not as saying "conduct that presents (*in the same way* that burglary, arson, etc., do) a serious risk of physical injury to another," but rather "conduct that presents (*in a manner different from* burglary, arson, etc.) a serious risk of physical injury to another." The use of *otherwise* in the statute negates the two canons.

In sum, the ordinary, natural meaning of § 924(e)(2)(B) encompasses DWI. Although other considerations can, and do, override ordinary meaning in some circumstances, I am not persuaded that such circumstances are present here. I therefore would apply ordinary meaning and reject Mr. Begay's argument. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.")

## B.     Reasonableness of Sentence

Mr. Begay contends that the district court violated *Booker* at sentencing when it stated that it could not impose a sentence below the Guidelines range unless a sentence within that range would be unreasonable.  Counsel for Mr. Begay had requested a sentence of 180 months and proffered several reasons why such a sentence would fulfill the purposes of sentencing set forth in 18 U.S.C. § 3553(a).  After hearing these arguments, the court stated:

> Now, in order at this point and noting the defendant's continuing objection, the low end of the guideline—applicable guideline range is 188 months.  The statutory minimum is 180 [months], and so in order for me to go below the guidelines, I have to make a finding that, under the sentencing factors, the sentence of 188 months is unreasonable.

> Again, taking a look at the guidelines, the way they're formulated and how they apply, how the Sentencing Commission has formulated the calculation of the guidelines if the armed career criminal enhancement applies, I cannot make a finding that 188 months is unreasonable under 18 U.S.C., under the sentencing factors of 18 U.S.C. § 3553(a).

> Therefore, the sentence imposed, the defendant will be committed to the custody of the Bureau of Prisons for a term of 188 months.

R. Vol. III at 15-16.  The court then addressed the terms of supervised release, imposed a fine, notified Mr. Begay of his right to appeal, and adjourned the hearing.

**1. Merits**

We agree with Mr. Begay that the district court erred. In *Booker*, 543 U.S. 220, the Supreme Court held that mandatory application of the Guidelines violated the Sixth Amendment. To remedy the violation, it made the Guidelines advisory. Appellate review of a sentence would henceforth be for "unreasonableness." *Booker*, 543 U.S. at 261-62. In other words, so long as the district court's sentence is reasonable, we will affirm it. *See United States v. Kristl*, 437 F.3d 1050, 1053-54 (10th Cir. 2006).

Although the Guidelines "continue to be the 'starting point' for district courts and for this court's reasonableness review on appeal," *United States v. Terrell*, 445 F.3d 1261, 1264 (10th Cir. 2006), they impose no rigid boundaries on what sentences are permissible. In any given case there could be a range of reasonable sentences that includes sentences both within and outside the Guidelines range. *Booker* and § 3553(a) do not require the district court to limit itself to those reasonable sentences within the Guidelines range. The court may impose a non-Guidelines sentence if the sentencing factors set forth in § 3553(a) warrant it, even if a Guidelines sentence might also be reasonable. The district court misconceived *Booker* when it said otherwise.

**2. Relief/Preservation**

Having determined that the district court erred, we must next resolve whether Mr. Begay is entitled to relief. He failed to object in district court to the

court's error. Ordinarily, this failure would require that we limit our review to plain error, *see United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc), so that we could set aside Mr. Begay's sentence only if he demonstrates that "there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings," *id*. (internal quotation marks omitted). In this case, we doubt that Mr. Begay could surmount the final requirement. *See id*. at 736-37.

Nevertheless, in certain circumstances we have excused a defendant's failure to object to an error by the district court when imposing sentence. We have relied on the provision in Fed. R. Crim. P. 51(b) that states, "If a party does not have the opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." Mr. Begay argues: "The district court did not explain until it announced Mr. Begay's sentence that it would not impose a sentence below the guideline range unless it found the guideline range to be unreasonable. Thus, the error was not apparent until it was too late to object." Aplt. Br. at 33.

In support of his position Mr. Begay cites *United States v. Bartsma*, 198 F.3d 1191 (10th Cir. 1999). In *Bartsma* the district court imposed a special condition of supervised release without giving notice to the defendant. The defendant did not object to the condition, but this court ruled that the issue had not been waived. We stated:

> Mr. Bartsma had no notice the district court was considering the special condition until the court stated its tentative sentence near the beginning of the sentencing hearing. . . . [T]he complete lack of notice made it impossible for the parties to anticipate the nature of the special condition and short-circuited the significance of any opportunity to comment.

*Bartsma*, 198 F.3d at 1198; *accord United States v. Bruce*, No. 05-2150, 2006 WL 2349216, at *8 (10th Cir. Aug. 15, 2006). Although the sentencing error in this case was not imposition of a special condition of supervised release, it was an error that Mr. Begay would have had no reason to anticipate. *Cf. United States v. Barajas*, 331 F.3d 1141, 1144 (10th Cir. 2003) (issue was not preserved when "defense counsel had constructive notice that the challenged conditions of release might be imposed" and failed to object); *United States v. Lopez-Flores*, 444 F.3d 1218, 1220-21 (10th Cir. 2006) (reviewing for plain error the defendant's claim that his sentence was unreasonable because the district court did not justify it under the § 3553(a) factors). Nothing in the record suggests that Mr. Begay should have been prepared for the district court's novel interpretation of *Booker*. Indeed, the government makes no attempt to distinguish *Bartsma*. Accordingly, we will follow *Bartsma* in excusing Mr. Begay's failure to object to the district court's error at the time of pronouncing sentence.

We must reverse and remand for resentencing unless the government can establish that the error was harmless. *See* Fed. R. Crim. P. 52(a). But the government fails to argue harmless error. Nor could it do so successfully. The

sentence imposed was at the bottom of the Guidelines range. We cannot say whether the district court would have imposed the same sentence if it had properly understood the post-*Booker* legal landscape. This "places us in the zone of speculation and conjecture." *United States v. Labastida-Segura*, 396 F.3d 1140, 1143 (10th Cir. 2005). Thus, remand is required so that the district court can determine whether it should impose a lower sentence, even though a sentence within the Guidelines range may indeed be reasonable.

## III.  CONCLUSION

We AFFIRM the district court's ruling that Mr. Begay is subject to a mandatory minimum sentence under 18 U.S.C. § 924. We REVERSE and REMAND for resentencing in light of our holding that the district court violated *Booker* at sentencing.

05-2253, *United States v. Begay*
**LUCERO**, J., concurring.

Following my careful review of my respected colleagues' separate expressions in this case, as well as the record, the legislative history, and the pertinent cases, I join the opinion of Judge Hartz, save for Part II(A)(3). I do not disagree with much of what Judge McConnell has said, but ultimately conclude that the language of the statute is so clear and unambiguous that it does not allow resort to the legislative history. 18 U.S.C. § 924(e)(2)(B)(ii) unequivocally reaches a myriad of crimes – burglary, arson, extortion, the use of explosives, "or [a crime that] otherwise involves conduct that presents a serious potential risk of physical injury to another" (emphasis added). In agreeing with Judge Hartz, the Eighth Circuit sitting en banc, and a panel of the Seventh Circuit, I conclude that a conviction for felony driving while under the influence falls within the ambit of the quoted statutory text.

Judge McConnell is right to highlight the dramatic increase in sentence that results from application of the Armed Career Criminal Act to Larry Begay's case. I agree that driving while under the influence may not have been in the minds of the 1986 amendment's sponsors when they drafted the residual language in § 924(e)(2)(B)(ii). Nevertheless, the wording that Congress chose is clear. If a change is to be made, it is for Congress, not the courts, to make.

05-2253, *United States v. Begay*
**McCONNELL**, **J**, dissenting in part.


The majority holds that serial drunk driving is a violent felony for purposes of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). As a result, it finds that the defendant was properly sentenced to over fifteen years in prison for a crime that otherwise would entail a Guidelines range of 41-51 months. I respectfully dissent.

The case arose when Mr. Larry Begay, a 44-year-old Navajo, threatened family members with an unloaded rifle and later pled guilty to unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Based on an offense level of 15 and a criminal history category of VI, the ordinary Guidelines range for this offense would be 41-51 months, which is a very substantial sentence. But that is not the end of the story. Mr. Begay has a long history of drinking and driving, though fortunately he has never injured anyone. Under New Mexico law, the first three convictions for driving while intoxicated (DWI) are misdemeanors, but subsequent DWIs are classified as fourth-degree felonies, punishable by a term of eighteen months or, upon a fifth conviction, of two years. N.M. Stat. Ann. § 66-8-102-(G)-(J). Mr. Begay has been convicted of DWI in New Mexico twelve times, which means that he has committed more than three felonies. Under the ACCA, any person convicted of unlawful possession of a firearm who has three previous convictions for a "violent felony" is subject to a mandatory minimum sentence of fifteen years and a Guidelines range of 188-235

months.  18 U.S.C. § 922(g); U.S.S.G. § 4B1.4.  The district court concluded that

serial DWI is a "violent felony," and sentenced Mr. Begay to a term of 188

months in prison.

The ACCA defines a "violent felony" as:

any crime punishable by imprisonment for a term exceeding one

year, or any act of juvenile delinquency involving the use or carrying

of a firearm, knife, or destructive device that would be punishable by

imprisonment for such term if committed by an adult, that--

**(i)** has as an element the use, attempted use, or threatened use of

physical force against the person of another; or

**(ii)** is burglary, arson, or extortion, involves use of explosives, or

*otherwise involves conduct that presents a serious potential risk of*

*physical injury to another*;

18 U.S.C. § 924(e)(2)(B) (emphasis added).  The majority joins with the two

other courts of appeals that have held felony DWI to be a "violent felony" within

the meaning of this statute.[1]  *See United States v. McCall*, 439 F.3d 967 (8th Cir.

---

[1]This Court and four other courts of appeals have held that felony DWI is a
crime of violence under the identical language of U.S.S.G. § 4B1.2(a)(2)).  *United
States v. Moore*, 420 F.3d 1218, 1220 (10th Cir. 2005); *United States v.
DeSantiago-Gonzales*, 207 F.3d 261, 264 (5th Cir. 2000); *United States v. Veach*,
455 F.3d 628 (6th Cir. 2006)*; United States v. McGill*, 450 F.3d 1276, 1280 (11th
Cir. 2006); *United States v. Rutherford*, 54 F.3d 370 (7th Cir. 1995).  I agree with
(continued...)

2006) (en banc); *United States v. Sperberg*, 432 F.3d 706 (7th Cir. 2005).[2] It is

with the greatest hesitation that I part company with these decisions. But I am

convinced that to treat drunk driving convictions, however numerous, as "violent

felonies" is unwarranted by the language of the ACCA and is contrary to the

intent of Congress.

In interpreting the term "crime of violence" in another portion of the

criminal code, a unanimous Supreme Court recently observed that the "ordinary

meaning of this term . . . suggests a category of violent, active crimes that cannot

be said naturally to include DUI offenses." *Leocal v. Ashcroft*, 543 U.S. 1, 11

---

[1](...continued)
the majority that these precedents are distinguishable, because the Sentencing
Commission's commentary to § 4B1.2(a)(2), which is ordinarily "binding on the
federal courts," *Stinson v. United States*, 508 U.S. 36, 46 (1993), employs a
broader interpretation of § 4B1.2(a)(2) than is evident from the language of §
924(e). See Maj. Op. 10-11. We owe deference to the Sentencing Commission's
commentary notes interpreting the Commission's Guidelines, but do not owe
deference to the Commission in interpreting acts of Congress, even when those
acts contain wording identical to a Guideline. In effect, because the Guideline
commentary note omits the key word "otherwise," the cases interpreting U.S.S.G.
§ 4B1.2(a)(2)) are not interpreting an identically worded provision.

An unpublished decision of this Court, *United States v. Gwartney*, 2006
WL 2640616 (10th Cir. 2006), recently held that "*Moore* clearly binds the panel"
in a case under the ACCA. This panel unanimously rejects the view that *Moore* is
so controlling.

[2]The Seventh Circuit in *Sperberg* relied on its prior precedent in
*Rutherford*, which was an interpretation of U.S.S.G. § 4B1.2(a)(2). *See Sperberg*,
432 F.3d at 708 (finding no distinction between an interpretation of USSG
§ 4B1.2(a)(2) and of 18 U.S.C. § 924(e)). Since the majority recognizes
(correctly) that an interpretation of U.S.S.G. § 4B1.2(a)(2) is not controlling with
respect to § 924(e), Maj. Op. 11, *Sperberg* can have no persuasive value here.

(2004). To be sure, that holding does not directly apply to this case, which involves a different statute with slightly different wording (though the Court's reliance on the "ordinary meaning" of the defined term would seem equally applicable here). But in reaching its interpretation in *Leocal*, the Court quoted from an earlier First Circuit decision, written by then-Circuit Judge Stephen Breyer, which interpreted the term "violent felony" in our statute, the ACCA, 18 U.S.C. § 924(e), as "call[ing] to mind a tradition of crimes that involve the possibility of more closely related, active violence." *Id.* at 11 (quoting *United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992)). The Supreme Court also cited this Court's observation in *United States v. Lucio-Lucio*, 347 F.3d 1202, 1205-06 (10th Cir. 2003), in connection with yet another subsection of the ACCA, that interpreting the term "crime of violence" to encompass accidental or negligent conduct, such as drunk driving, "would blur the distinction between the 'violent' crimes Congress sought to distinguish for heightened punishment and other crimes." *Leocal*, 543 U.S. at 11. These comments and citations strongly suggest that the Supreme Court does not view drunk driving as within the "violent" category of crimes Congress singled out for heightened punishment, under any of these similar but not identical statutes.

Mr. Begay argues that felony drunk driving does not fall within the meaning of the statutory term "violent felony," and that interpretation of the statute to include felony drunk driving is contrary to the purpose of the statute, its

-4-

legislative history, and several hoary canons of statutory interpretation.  The en banc Eighth Circuit and the concurrence in this case resist resort to legislative intent and canons of interpretation on the ground that the language of the statute is "plain."  *McCall*, 439 F.3d at 971 ("we must construe the provision consistent with its plain language"); *id.* ("When a statute's plain language is this clear, it is controlling, without regard to contrary hints in the legislative history and without the need to refer to the canons of *noscitur a sociis* and *ejusdem generis*"); Concur. Op. 1 ("the wording that Congress chose is clear").  The opinion for the Court does not appear to agree that the language is "plain," but instead looks to legislative history and other outside indications of congressional meaning.

Unlike the concurrence, I find the language of § 924(e) anything but "plain," and in light of evidence of legislative intent and canons of construction, I believe the language favors the defendant.  The ACCA defines "violent felony" as including any crime punishable by more than one year in prison that either "has as an element the use, attempted use, or threatened use of physical force against the person of another" or "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B).  The question is whether felony drunk driving qualifies under the second of these definitions.

This definition is susceptible to two linguistically plausible interpretations. The first, favored by the government, has been dubbed the "all crimes"

-5-

interpretation.  *See McCall*, 439 F.3d at 977 n.8 (Lay, J., dissenting).  Under this interpretation, a violent felony is any crime, regardless of its nature, that involves conduct presenting a serious potential risk of physical injury to another.  The examples that precede the "otherwise involves" clause, under this interpretation, do not limit or narrow the scope of the definition, but rather are listed to make sure that the crimes of burglary, arson, extortion, and crimes using explosives are categorically included.

The second, favored by the defense, has been dubbed the "similar crimes" interpretation.  *Id.* at 977 n.9.  Under this interpretation, the general phrase "otherwise involves conduct that presents a serious potential risk of physical injury to another" is limited to crimes of a nature similar to the enumerated crimes of burglary, arson, extortion, and crimes using explosives.  Each of these enumerated crimes involves violent, aggressive conduct; each is characteristic of the armed career criminal, the eponym of the statute.  In the words of the First Circuit in *Doe*, 960 F.2d at 225, quoted with approval by the Supreme Court in *Leocal*, 543 U.S. at 11, these are "crimes that involve the possibility of more closely related, active violence."  Moreover, each of the enumerated crimes is potentially more dangerous when firearms are involved, which is evidently the reason Congress imposed so severe a penalty on persons who have committed these crimes who later are found in possession of a firearm.      Both sides appear to agree that drunk driving is not of this nature.  Although it undoubtedly entails

-6-

risk of physical injury to others, drunk driving is a crime of negligence or recklessness, rather than violence or aggression; it is not characteristic of career criminals; and its dangers are unrelated to the presence or use of firearms. The question in this case therefore comes down to which interpretation of the statute is correct. If the "all crimes" interpretation is correct, drunk driving is included; if the "similar crimes" interpretation is correct, drunk driving is not included.

Looking first at the language chosen by Congress, I consider the "similar crimes" interpretation more persuasive. The key is Congress's use of the term "otherwise." Under the "all crimes" interpretation adopted by the majority, the word "otherwise" is surplusage. The statute is interpreted as if Congress had defined "violent felony" as any felony that "is burglary, arson, or extortion, involves use of explosives, or . . . involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B) (omitting the word "otherwise"). That is not the statute Congress wrote. By using the word "otherwise," Congress indicated a substantive connection between the enumerated crimes and the general phrase. Rather than covering *all* felonies involving "conduct that presents a serious potential risk of physical injury to another," Congress limited coverage to felonies that "otherwise" involve such a risk – in other words, felonies that, while not identical to burglary, arson, extortion, or explosives offenses, impose a similar sort of risk.

-7-

Other indicia of meaning support this interpretation. The Supreme Court has repeatedly stated that "'[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.'" *U.S. Nat. Bank of Ore. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (quoting *United States v. Heirs of Boisdore*, 8 How. 113, 122, 12 L.Ed. 1009 (1850)); *see also Dole v. Steelworkers*, 494 U.S. 26, 35 (1990). Given the history and purpose of the ACCA, as well as the context of the "otherwise" clause in the statute, felony driving while intoxicated simply does not fit with the other crimes enumerated and contemplated by § 924(e).

When confronted with another question regarding the interpretation of 18 U.S.C. § 924(e)(2)(B)(ii) – the meaning of "burglary" – the Supreme Court took its bearings from a detailed examination of the history and purposes of the provision. *Taylor v. United States*, 495 U.S. 575, 581-90 (1990). The Court concluded that "Congress focused its efforts on career offenders – those who commit a large number of fairly serious crimes as their means of livelihood, and who, because they possess weapons, present at least a potential threat of harm to persons." *Id*. at 587-88. The Court interpreted the statutory term "burglary" in terms of that general purpose. *See id.* at 590 ("These observations about the purpose and general approach of the enhancement provision enable us to narrow the range of possible meanings of the term 'burglary.'"). Applying the same method here, it seems beyond question that drunk drivers fall outside any

-8-

reasonable understanding of Congress's definition of an "armed career criminal." Drunk drivers do not drive drunk "as their means of livelihood," and the threat they pose to other persons has nothing to do with whether they possess weapons.[3]

More specific legislative history confirms the "similar crimes" interpretation. The first version of the ACCA sentencing enhancement, enacted by Congress in 1984, applied to any convicted felon found guilty of possession of a firearm who had three previous convictions for robbery or burglary. *Taylor*, 495 U.S. at 581. In 1986, Congress debated two proposals for expanding the reach of the enhancement. The broader proposal would have included any felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* at 583 (quoting S. 2312, 99th Cong., 2d Sess. (1986); H.R. 4639, 99th Cong., 2d Sess. (1986)). If enacted, this enhancement would have included crimes, such as vandalism, that involve the use of physical force against property even if there was no substantial risk of injury to a person. The narrower proposal

---

[3]The opinion for the Court would have us discount Congress's purpose of targeting career criminals, arguing that it would be "disrespectful to legislative drafting[] to let such a title override statutory language." Maj. Op. 15. Yet in *Taylor*, in determining the meaning of the statutory term "burglary," the Supreme Court relied heavily on the connection between that term and the congressional object of heavily punishing "armed career criminals." *Taylor* 495 U.S. 587-90. It can hardly be improper for us to use the same interpretative approach here. Moreover, the legislative history, both originally and in the amendments relevant to this case, makes clear that the title – the "Armed Career Criminal Act" – was not merely decorative. *See* H.R. Conf. Rep. 98-1159 (1984).

would have applied the enhancement to "any State or Federal felony that has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* (quoting H.R. 4768, 99th Cong., 2d Sess. (1986)). If enacted, this bill would have excluded burglary and arson, which do not contain as an element the use of force against a person. The bill that ultimately was enacted was a compromise: it extended the definition of "violent felony" to those not involving the use of physical force against a person if there was "serious risk of physical injury to another." *Id.* at 586. The House Committee on the Judiciary explained:

> [One] major question involved in these hearings was as to what violent felonies involving physical force against *property* should be included in the definition of 'violent' felony. The Subcommittee agreed to add the crimes punishable for a term exceeding one year that involve conduct that presents a serious potential risk of physical injury to others. This will add State and Federal crimes against property such as burglary, arson, extortion, use of explosives and *similar crimes* as predicate offenses where the conduct involved presents a serious risk of injury to a person.

*Id.* at 587 (quoting H.R.Rep. No. 99-849 (1986) (first emphasis in original, second emphasis added)). This legislative history makes clear that Congress intended the expanded definition to cover only "similar crimes" – that is, crimes "similar" to burglary, arson, extortion, and use of explosives. For reasons already explained, that does not include drunk driving.

The *McCall* decision's contrary interpretation of the legislative history is based on the notion that the "otherwise involves" clause of § 924(e)(2)(B) was drafted first, and that the enumerated crimes were "add-ons":

> [T]he enumerated crimes and the word "otherwise" were *added* to the "involves conduct" language. The form of the addition made the "otherwise involves" provision look like a catchall when in fact it was initially the operative provision. Adding the enumerated crimes served the obvious purpose of including all prior convictions for those crimes (burglary, arson, extortion, use of explosives), regardless of whether they present a serious potential risk of physical injury. Given this drafting sequence, it is wrong to infer that Congress intended to limit the "otherwise involves" provision to offenses that are similar to the enumerated add-ons.

*McCall*, 439 F.3d at 971 (internal citations omitted). With all respect, I think this is a misleading interpretation. To be sure, the version of the amendment immediately prior to the addition of the "otherwise involves" language did not enumerate the crimes of burglary, arson, extortion, and use of explosives, but this has to be viewed in a broader context. Congress was amending the 1984 version of the statute, which applied explicitly to robbery and burglary, and only to those crimes. These were not "enumerated add-ons," as the *McCall* opinion calls them, but were the statutory foundation on which the congressional deliberations were based. The entire thrust of the 1986 debates was to expand the statute to encompass other crimes that warranted the same treatment already given to robbery and burglary. The only question was how far to go. In answering that question, we need not "infer" that Congress intended to limit the provision to

-11-

"offenses that are similar to the enumerated [crimes]," as the *McCall* opinion states. *Id.* The House Judiciary Committee report explicitly tells us: "This will add State and Federal crimes against property such as burglary, arson, extortion, use of explosives and *similar crimes* as predicate offenses where the conduct involved presents a serious risk of injury to a person." *Taylor*, 495 U.S. at 587 (quoting H.R.Rep. No. 99-849 (1986) (emphasis added).

Moreover, the statutory language adopted by Congress contradicts the *McCall* opinion's interpretation. According to *McCall*, "[a]dding the enumerated crimes served the obvious purpose of including all prior convictions for those crimes (burglary, arson, extortion, use of explosives), regardless of whether they present a serious potential risk of physical injury." *McCall*, 439 F.3d at 971. But this interpretation is belied by Congress's use of the word "otherwise." Whatever else it may mean, the term "otherwise" unmistakably indicates that Congress believed the enumerated crimes *do* present a substantial potential risk of physical injury to others (presumably because burglary, arson, extortion, and explosives crimes frequently, even if not invariably, erupt into violence). It makes no sense to refer to crimes that "otherwise involve" such a risk if the previously listed crimes do not do so. The listed crimes were not "enumerated add-ons"; they were illustrative or even paradigmatic.

The opinion for the Court apparently favors the *McCall* opinion's analysis of the legislative history, but ultimately places little or no weight on it. See Maj.

-12-

Op. 20 ("I think the *McCall* majority view is the more plausible, but it is impossible to know.  This ambiguous history is not particularly persuasive either way.").  The opinion for the Court instead emphasizes what it considers to be the "ordinary meaning" of the defined term, Maj. Op. 14, reenforced by an analysis of the statutory purpose.  I have already explained why I consider the "similar crimes" interpretation the more plausible rendition of the statutory language.  The Court's analysis of statutory purpose warrants additional response.

The opinion for the Court notes that Congress used two different, though similar, terms – "crime of violence" and "violent felony" – in the same statutory section.  *Compare* 18 U.S.C. § 924(c)(3) ("crime of violence") *with* § 924(e)(2)(B) ("violent felony").  The term "crime of violence" is defined in such a way that drunk driving is excluded.  The opinion for the Court invites us to infer that the more ambiguous language of § 924(e)(2)(B) must lead to the opposite conclusion.  The problem with this argument is that the definitions of the two terms vary in a number of different ways.  In some respects, § 924(c)(3) is the broader provision, and in some respects it is the narrower.  Section 924(c)(3) is broader, for example, in that it includes all crimes with a substantial risk of physical force against *property*, not just against persons; it is narrower in that it is confined to crimes involving the risk of the use of "force."  No doubt an intensive analysis could reveal the unifying rationale for all these differences, but it is not immediately apparent.

-13-

The opinion for the Court, however, offers a theory. According to that theory, the important distinction is that § 924(c)(3) defines a separate offense, while § 924(e)(2)(B) imposes an enhanced sentence for the present offense on those who have committed violent felonies in the past. Maj. Op. 17. That is true. But the fact that one provision creates a separate offense while the other imposes a higher sentence for the present offense does not cast much light on the question in this case, because it does not provide any general rationale for the differences between the provisions. If § 924(c)(1)(A) were narrower in all, or even most, respects, one might surmise that Congress was more circumspect in creating a new crime than in imposing an enhanced penalty; but that explanation does not meet these facts.

Nor is the Court's more specific analysis of the statutory purpose of the two provisions more helpful. According to the Court:

> The definition in § 924(c) was used to create a criminal offense. Under § 924(c)(1)(A), "any person who, during and in relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" is subject to punishment for a separate offense with a minimum sentence of five years' imprisonment. In other words, when someone while committing a "crime of violence" uses or carries a firearm or possesses a firearm in furtherance of that crime, then that person has violated § 924(c). Undoubtedly, Congress defined *crime of violence* in this context to capture those crimes in which the danger is magnified by the firearm. It is not surprising that DWI is not a "crime of violence," because a firearm in the car does not increase the danger from the DWI offense.

*Id.* at 16-17. On the other hand, according to the opinion for the Court:

-14-

> The definition in § 924(e)(2)(b) is to identify persons who should be sentenced to very long terms for their present offense (possession of a firearm by a convicted felon) because of their criminal history. One may disagree with the choice, but it seems perfectly reasonable to include within the definition those who have a confirmed history of displaying contempt for human life or safety—those who, in the statutory language, have repeatedly committed felonies "involv[ing] conduct that presents a serious potential risk of physical injury to another." From this perspective, there is nothing remarkable about including felony DWI as a "violent felony."

*Id.* at 17. The opinion for the Court thus concludes that a "crime of violence" under § 924(c)(1)(A) is limited to "those crimes in which the danger is magnified by the firearm," which does not include DWI, while "violent felony" under § 924(e)(2)(B) extends more broadly to "those who have a confirmed history of displaying contempt for human life or safety," which does include DWI.

Neither half of this analysis is persuasive. While the Court's interpretation of § 924(c)(1)(A) as focusing on "crimes in which the danger is magnified by the firearm" is eminently sensible, there is no reason not to apply the same logic to § 924(e)(2)(B). That section, after all, imposes its enhanced penalty only on those whose present offense involves the unlawful possession of a firearm. The Court's surmise that "it seems perfectly reasonable to include within the definition [under § 924(e)(2)(B)] those who have a confirmed history of displaying contempt for human life or safety" substantially broadens the target of the statute, beyond anything in the language or legislative history of the statute. If that were the congressional purpose, why limit the enhanced penalty to those who commit firearms offenses?

-15-

The "similar crimes" interpretation is further supported by at least two established canons of statutory construction. The doctrine of *noscitur a sociis*, meaning "a word is known by the company it keeps," is often applied to a general term that "is capable of multiple meanings in order to avoid the giving of unintended breadth to the Acts of Congress." *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961). Similarly, under the doctrine of *ejusdem generis*, "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-15 (2001) (internal quotation marks omitted). Both canons confirm the "similar crimes" interpretation. The opinion for the Court reminds us that the Supreme Court "appears to reject [the canons'] application as often as it embraces them." Maj. Op. 20. Even the case cited by the Court, however, acknowledges that use of *ejusdem generis* is "firmly established" when a statute's meaning is uncertain. *Garcia v. United States*, 469 U.S. 70, 74 (1984) (quoting *United States v. Powell*, 423 U.S. 87, 91 (1975)). Under these rules of construction, the ACCA's "otherwise" clause should be restricted to violent, active crimes which, like burglary, arson, extortion, and crimes involving explosives, are typical of career criminals, and which are more dangerous when committed in conjunction with firearms.

-16-

The opinion for the Court also rejects the canons on the ground that it is not obvious that all burglaries – for example "opening an unlocked front door to a home for the purpose of committing larceny" – are "violent." Maj. Op. 21. But this is just to quibble with Congress's judgment that, in the typical case, burglary is a crime that is likely to explode into violence risking substantial injury to the householder. It is well established that whether a crime is a violent felony must be determined on a categorical basis, not on the specific facts of the case. *Taylor*, 495 U.S. at 600-01. I do not argue that Mr. Begay's DWI offenses are not "violent felonies" because he did not hurt anyone (though he did not), but because, on a categorical basis, the crime of DWI does not have the typical attributes of a violent felony, as defined in the statute.

Finally, it bears mention that the rule of lenity may apply. This Court has stated that "we will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *United States v. Diaz*, 989 F.2d 391, 393 (10th Cir. 1993) (internal citations omitted). *See, e.g., United States v. Giles*, 213 F.3d 1247 (10th Cir. 2000) (using lenity to hold that "patches" are not "goods" under the law governing trafficking in counterfeit labels); *United States v. Bazile*, 209 F.3d 1205 (10th Cir. 2000) (using lenity to overturn a mandatory life sentence under U.S.S.G. § 2K2.4(a)); *United States v. Wicklund*, 114 F.3d 151 (10th Cir. 1997) (invoking lenity to overturn the district

-17-

court's contrary interpretation of a murder-for-hire statute).  To be sure, "a court must first consult 'all available relevant materials,' and invoke the rule of lenity only as a tie-breaker when ordinary means of discerning statutory meaning leave the issue in 'equipoise.'" *United States v. DeGasso*, 369 F.3d 1139, 1149 (10th Cir. 2004) (quoting *United States v. Wilson*, 10 F.3d 734, 736 (10th Cir. 1993); *United States v. Ruiz-Gea*, 340 F.3d 1181, 1188 (10th Cir. 2003)).  I am inclined to think the rule of lenity is not needed in this case because the defendant should prevail under other approaches to statutory interpretation.  But the opinion for the Court declines to find the language of § 924(e) "plain"; it finds the legislative history "not particularly persuasive either way" (Maj. Op. 20); it concludes that the canons of statutory interpretation are of little help (*id.* at 21); and it offers only speculation regarding congressional purpose (*id*. at 15-17).  In such a case, the rule of lenity should tip the scales.

The "similar crimes" interpretation thus finds support in an impressive array of interpretive methods: ordinary meaning, avoidance of surplusage, consistency with general statutory purposes, specific legislative history, and two canons of construction, plus the rule of lenity.  I therefore conclude that 18 U.S.C. § 924(e)(2)(B)(ii) should be given the "similar crimes" interpretation, and that under that interpretation, felony DWI is not a "violent felony."  I respectfully dissent from Part IIA of the opinion for the Court.  I join Part IIB.

-18-